REVISED - June 25, 2001

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-30610
_____


HOME PORT RENTALS, INC.,

                              Plaintiff-Appellee-Cross-Appellant,

v.


THE INTERNATIONAL YACHTING GROUP, INC., ETC.; ET AL.,

                              Defendants,

ROGER MOORE,

                              Defendant-Appellant-Cross-Appellee.


- - - - - - - - - -
Appeals from the United States District Court
for the Western District of Louisiana
- - - - - - - - - -

May 21, 2001

Before WIENER and STEWART, Circuit Judges, and SMITH, District
Judge.[*]

WIENER, Circuit Judge.

     Appellant-Cross-Appellee Roger Moore and several co-defendants
were cast in judgment in March, 1989 (the "1989 judgment") by the
United States District Court for the District of South Carolina
(the "rendering court").  Although he did not appeal that judgment,
two of his co-defendants did, and it was affirmed.  Moore now
appeals from a judgment rendered a decade later by the district

_____

     [*] District Judge of the Western District of Texas, sitting
by designation.

court for the Western District of Louisiana, (1) denying Moore's motion to dismiss two petitions filed simultaneously on March 17, 1999 by Appellee-Cross-Appellant Home Port Rentals, Inc. ("Home Port"), the successful plaintiff in the rendering court which sought to register and enforce the 1989 judgment in the district court for the Western District of Louisiana (the "registration court"), and (2) declaring the 1989 judgment enforceable in the Western District of Louisiana until April 2, 2002, the tenth anniversary of the 1989 judgment's finality on appeal. We affirm the registration court's denial of Moore's motion to dismiss; we modify that court's declaration of enforceability in the Western District of Louisiana by changing the commencement date of the applicable period of limitation (Louisiana's 10-year liberative prescription for enforcement of judgments) from April 2, 1992 (the date that the 1989 judgment was affirmed by the Fourth Circuit) to March 17, 1999, the date it was registered in the registration court; and, as thus modified, we affirm the registration court's declaration of enforceability of the 1989 judgment in the Western District of Louisiana.

## I. Facts and Proceedings

In 1989, the rendering court held Moore and his co-defendants liable to Home Port for $1,200,000 in compensatory damages and $50,000 in punitive damages for securities fraud, common law fraud, and breach of contract. By an order dated March 16, 1989 and entered March 17, 1989, the rendering court directed its clerk of court to enter judgment for Home Port, which the clerk did on March

2

20, 1989.  This judgment, the 1989 judgment, was affirmed by the United States Court of Appeals for the Fourth Circuit, and that court's mandate issued on April 2, 1992.  Ultimately, the Supreme Court of the United States denied <u>certiorari</u>.

Fast forward to 1999.  On March 17 of that year —— three days shy of the tenth anniversary of the rendering court's entry of the 1989 judgment —— Home Port simultaneously filed two petitions in the registration court.  One seeks registration of a foreign judgment, pursuant to 28 U.S.C. § 1963; the other seeks to enforce that judgment in the Western District of Louisiana.

After Moore filed a motion to dismiss Home Port's two petitions, the registration court referred the case to a magistrate judge for a Report and Recommendation, which was prepared and filed in due course.  The magistrate judge recommended that the district court deny Moore's motion to dismiss Home Port's petitions and that the court declare the 1989 judgment enforceable in the Western District of Louisiana until April 2, 2002, 10 years after the issuance of the Fourth Circuit's mandate affirming the appealed 1989 judgment.

Both Moore and Home Port filed written objections to the magistrate judge's recommendations.  Moore faulted the report for "failing to apply Louisiana Civil Code art. 3501 in its entirety" and for finding the 1989 judgment enforceable until April 2, 2002, rather than until March 20, 1999 only.  Moore contended that the earlier date, 10 years after the 1989 judgment was entered by the rendering court, was the last date on which South Carolina law

3

would permit that judgment to be enforced, regardless of appeal, insisting that South Carolina law should control.[1]

Home Port's objection criticized only the magistrate judge's legal conclusion that the running of Louisiana's prescriptive period for an action to enforce a registered judgment commenced to run on the day the underlying judgment was affirmed on appeal. Home Port contended that Louisiana's 10-year liberative prescription, which applies to money judgments in federal district courts located in the state, commences to run not from either the date on which the original judgment was entered in the rendering court or the date on which it was affirmed on appeal, but from the date it was registered in the registration court. Specifically, Home Port faulted the report's conclusion that, <u>for purposes of enforcement in the registration court's district</u>, registration under § 1963 is not governed by the same prescriptive period as would be applicable to a plenary judgment of a Louisiana-domiciled federal district court grounded on a foreign judgment ("judgment-on-judgment"); and that § 1963 rather than Louisiana law governs the commencement date for the running of prescription on a judgment of the registration court.

---

[1] We fail to see the significance of this difference to Moore because, using either date, Home Port's commencement of judicial proceedings to enforce the 1989 judgment in the Western District of Louisiana was timely, i.e., was started before either South Carolina's statute of limitations or Louisiana's acquisitive prescription had expired, even when counting from the 1989 judgment's date of entry. Under any system with which we are familiar, proceedings to enforce or execute a judgment need only be <u>commenced</u> before the bar date, even if the limitation period is a statute of repose or peremption; enforcement need not be <u>completed</u> before the bar date.

4

Over those objections, the district court adopted the magistrate judge's Report and Recommendation and ruled accordingly. Moore timely filed a notice of appeal, and Home Port timely filed such a notice for its cross-appeal.

## II. Analysis

### A. Standard of Review

We review the denial of Moore's dismissal motion <u>de novo</u>.[2] As the material facts of this case are undisputed, the issues presented on appeal, including interpretation of state and federal statutes and jurisprudence, and determining which among those are applicable, are issues of law so we also review them <u>de novo</u>.[3]

### B. Background

When, on March 17, 1999, the rendering court's money judgment was registered in the registration court, it was still "live" — enforceable — under applicable South Carolina law.[4] Likewise, as of its registration on March 17, 1999, the 1989 judgment would still have been enforceable under Louisiana law.[5] Thus, at a time

---

[2] <u>Calhoun County, Tex. v. United States</u>, 132 F.3d 1100, 1103 (5th Cir. 1998).

[3] <u>Hart v. Bayer Corp.</u>, 199 F.3d 239, 243 (5th Cir. 2000).

[4] S.C. Code Ann. § 15-39-30 (Law. Co-op. 2001) ("Executions may issue upon final judgments or decrees at any time within ten years from the date of the original entry thereof and shall have active energy during such period, without any renewal or renewals thereof, and this whether any return may or may not have been made during such period on such executions").

[5] La. Civ. Code Ann. art. 3501 (West 2001) ("A money judgment rendered by a trial court of this State is prescribed by the lapse of ten years from its signing if no appeal has been taken, or, if an appeal has been taken, it is prescribed by the lapse of ten years from the time the judgment becomes final.").

5

when it remained enforceable in both the rendering and the registration jurisdictions, (1) the 1989 judgment was registered, and (2) enforcement proceedings were commenced — "execution [] issue[d]" in South Carolina terminology — in the registration court. Even if measured from the entry date of March 20, 1989 and not the date of finality under Louisiana law or § 1963, neither state's bar date had yet arrived when registration was accomplished.

The 1989 judgment was registered pursuant to 28 U.S.C. § 1963, which provides for the registration of one federal district court's money judgment in another federal district court as the precursor to enforcement of the original judgment in the latter court.[6] Prior to the adoption of § 1963, a judgment creditor from one federal district court who wanted to enforce a money judgment in another district had to bring suit in the other federal district court and obtain a new judgment of the second court (a "judgment-on-judgment"). Section 1963 was enacted in large part to "assist[] judgment creditors by making it possible for them to pursue the property of a debtor in satisfaction of a judgment by the ordinary process of levying execution on a judgment in any district where

---

[6] 28 U.S.C. § 1963 (2001). "A judgment in an action for the recovery of money or property entered in any...district court...may be registered by filing a certified copy of the judgment in any other district [court]...when the judgment has become final by appeal or expiration of the time for appeal....A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." (emphasis added).

6

the judgment is registered."[7]   An express reason for Congress's enacting § 1963 was "to spare creditors and debtors alike both the additional costs and harassment of further litigation which would otherwise be required by way of an action on the judgment in a district court other than that where the judgment was originally obtained."[8]   Thus, the question we are asked today is:  Strictly for purposes of enforcement within the registration court's district, precisely what are the effects of registration of a money judgment that is still enforceable in the rendering court's district as well as in the district where registered?

C.   Case Law

We are aware of no Supreme Court authority on point, and of very little pertinent jurisprudence from federal appellate or district courts.[9]   Still, we are not wholly without jurisprudential guidance.   The landmark case in this area is <u>Stanford v. Utley</u>, authored by Judge (later Justice) Blackmun for the Eighth Circuit Court of Appeals.[10] The <u>Stanford</u> court was called on to consider the enforceability, in a federal district court in Missouri, of a judgment that had been rendered by a federal district court in Mississippi, then registered the next day, pursuant to § 1963, in

---

[7] S. Rep. No. 1917 (1954), <u>reprinted in</u> 1954 U.S.C.C.A.N. 3142.

[8] <u>Id.</u>

[9] <u>Juneau v. Couvillion</u>, 148 F.R.D. 558, 560 (W.D. La. 1993)("Only a handful of courts have addressed the interplay between § 1963 registration and state statutes of limitation").

[10] <u>Stanford v. Utley</u>, 341 F.2d 265 (8th Cir. 1965).

7

a federal district court in Missouri. Obviously, then, the judgment from Mississippi had been registered in Missouri at a time when that judgment was still enforceable in both Mississippi and Missouri. The kicker in Stanford is that, following registration pursuant to § 1963, no proceedings to enforce the registered judgment from Mississippi were instituted in Missouri until more than seven years after that judgment had been rendered in Mississippi and registered in Missouri. In the meantime, Mississippi's seven-year statute of limitations for enforcing judgments in that state —— and thus in federal courts located there —— had expired; but Missouri's 10-year limitation period had not.

In concluding that the post-registration expiration of the rendering state's statute of limitations for enforcement of judgments had no effect on enforcement proceedings commenced in the court of registration at a time when the registration state's statute of limitations for enforcement of judgments had not yet expired, the Stanford court recapped its analysis with the following pronouncement:

> We have concluded that § 1963 is more than "ministerial" and is more than a mere procedural device for the collection of the foreign judgment. We feel that registration provides, so far as enforcement is concerned, the equivalent of a new judgment of the registration court. In other words...for enforcement purposes, the [registration state] federal registration equated with a new [registration state] federal judgment on the original [rendering state] federal judgment, that is, it is no different than a judgment timely obtained by action in [the registration

8

state] federal court on that [rendering state] judgment.[11]

_Stanford_'s express recognition of the applicability of Missouri's statute of limitations and the inapplicability of Mississippi's, _for purposes of post-registration enforcement in Missouri_, underpins that court's holding that, as far as enforcement in the registration court's district is concerned, a "live" judgment duly registered there is the full legal equivalent of a judgment-on-judgment.

This holding in _Stanford_ makes obvious the legal truism that once a money judgment of the rendering court is timely _registered_ in another district court pursuant to § 1963 at a time when enforcement of that judgment is not time-barred in either jurisdiction, the subsequent expiration of the rendering court's statute of limitations has no effect whatsoever on _enforcement_ of the judgment _in the district of the registration court_. After registration, time of enforcement is controlled solely by the statute of limitations of the state where the registration court is domiciled.

We have neither been cited to a case nor found any on our own that questions _Stanford_'s holding that, when a money judgment rendered in one federal district court is _registered_ in another federal district court at a time when the original judgment is still _enforceable_ under the laws of both states, registration truly is the equivalent of a new judgment of the registration court _for_

---

[11] _Id._ at 268 (emphasis added).

9

<u>purposes of enforcement in the registration district</u>.  That the registered judgment might not be congruent with a new judgment of the registration court for every purpose other than enforcement —— a possibility recognized in <u>Stanford</u> and elsewhere —— is of no moment to the instant inquiry.  We are concerned with only the narrow, two-pronged question, "which state's statute of limitations applies for enforcement purposes in the registration court, and when does that state's applicable limitation period for enforcement in the registration court start to run?"

We have not previously addressed this precise question, but in our otherwise distinguishable case of <u>United States v. Kellum</u>,[12] we expressed agreement with <u>Standford</u>'s core pronouncements.  After quoting <u>Stanford</u>'s holding that "[r]egistration provides...the equivalent of a new judgment of the registration court...." and is "no different than a judgment timely obtained by action in [the registration] court on [the rendering court's] judgment," we stated in <u>Kellum</u> that "[w]e agree with the holding in <u>Stanford</u>...."[13]

---

[12] 523 F.2d 1284 (5th Cir. 1975).  <u>Kellum</u> involved a district court judgment in Mississippi, <u>in favor of the United States</u>, that was <u>registered</u> in a different district court <u>in the same state</u> at a time when the judgment was still "live" under Mississippi's seven-year statute of limitation which was applicable in both districts.  <u>Id.</u> at 1285-86.  <u>Enforcement</u>, however, was not instituted until more than seven years after entry of judgment, <u>id.</u> at 1285; but the judgment was enforced because the United States was not subject to the state statute of limitation or barred by a federal limitation period.  <u>Id.</u> at 1287. The question ultimately presented in <u>Kellum</u> regarding the effect of registration on enforcement was whether registration "renewed or revived" the judgment of the rendering court which was no longer "live" there.  <u>Id.</u> at 1289.  We face no such question today.

[13] <u>Id.</u> at 1289.

10

There, we (admittedly in dicta) voiced our approbation of Stanford's recognition that, for purposes of enforcement, registration is the equivalent of a new judgment of the registration court. Kellum even states that, despite agreement with Stanford's holding, it is inapposite to the precise issue presented in Kellum. Nevertheless, Stanford remains good law lo these 36 years and, unlike in Kellum (which dealt with a judgment in favor of the United States that was exempt from the local statute of limitations), is pertinent to the issue we decide today.

D.   Enforceability

The first prong of the question here presented is not seriously challenged on appeal, nor was it in the district court. Section 1963 concludes with the statement that "[a] judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." Specifically, none here seriously question that § 1963, particularly when read in context with Stanford, includes applicability of the registration court's limitation period among § 1963's "same effects," or that such period is an integral element of the "like manner" for enforcing both registered judgments and new judgments of the registration court. "As the Stanford case holds, if a judgment is properly registered in one state, it may be enforced within the limitation period of that state even though the time for enforcement has run in the rendering state."[14] Moore's

_____

[14] Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2787 (2d ed. 1995).

11

contention that South Carolina's statute of limitations —— which he insists expired ten years after entry of the 1989 judgment, i.e., on March 20, 1999, and not ten years after it was affirmed on appeal —— is thus clearly specious. Even more specious is Moore's suggestion that South Carolina's statute of limitations had any effect on enforcement of the 1989 judgment in the Western District of Louisiana once that judgment was timely registered there.

Our inquiry does not end, however, with our determination that Louisiana's 10-year liberative prescription on <u>enforcement</u> of the 1989 judgment <u>in the Western District of Louisiana</u> is the applicable limitation law. We must also determine <u>when</u> Louisiana's prescription clock started to tick: Was it on (1) March 20, 1989 when the 1989 judgment was entered, as Moore contends, or (2) April 2, 1992, when the Fourth Circuit's mandate affirming that judgment issued, as the district court held, or (3) March 17, 1999, when the 1989 judgment was registered in the registration court, as Home Port contends? This issue was not raised in Stanford because the judgment at issue there was registered in Missouri only one day after it was rendered in Mississippi. Section 1963 strongly implies the answer by equating the registered judgment with a new judgment of the registration court —— as does Stanford and even our opinion in Kellum, at least vis-à-vis enforcement. But, one federal circuit court has addressed and answered the question directly: Marx v. Go Publishing Co., Inc.[15]

---

[15] 721 F.2d 1272 (9th Cir. 1983) (per curiam).

12

In Marx, the Ninth Circuit couched the issue precisely as "whether registration under 28 U.S.C. 1963 creates a new judgment for statute of limitations purposes, giving the judgment-creditor ten years [in that case, the registration state's period of limitation] from the date of registration in which to satisfy the judgment."[16] Analogizing § 1963 to California's Sister State Foreign Money Judgments Act,[17] the Marx court found that statute to be the state analog of § 1963 and noted that California's 10-year limitation period "runs anew" from the time of registration, provided the judgment is not then time-barred and the other requisites of the statute are fulfilled.[18] Thus, in the only circuit that has squarely held just when it is that the statute of limitations applicable to registered judgments commences to run, the date on which a "live" judgment is registered was determined to be the appropriate date, irrespective of the date of entry of the underlying judgment or the date it became final.

Despite the magistrate judge's Report and Recommendation's rejection of Marx as instructive on the ground that its reasoning is extended by analogy to the registration state's statute governing enforcement of foreign judgments rather than by analogy to that state's statute of limitations on enforcement of domestic judgments, we find Marx quite persuasive. Moreover, we are

_____

[16] Id. at 1273.

[17] Cal. Civ. Proc. Code §§ 1710.10-.65 (West 2001); Cal. Civ. Proc. Code § 337.5 (West 2001); Epps v. Russell, 133 Cal. Rptr. 30 (Cal Ct. App. 1976).

[18] 721 F.2d at 1273.

13

reluctant to create a circuit split by holding differently, particularly when we agree with the Ninth Circuit's holding despite getting there via a slightly different route. Given the pronouncements in Marx,[19] Stanford,[20] and Kellum,[21] and the plain language of § 1963, we join the Ninth Circuit in holding that when a money judgment (1) is rendered in a federal district court located in one state, and (2) is duly registered in a district court located in another state, (3) at a time when enforcement of that judgment is not time-barred in either state, the applicable limitation law for purposes of enforcement of the registered judgment in the registration district is that of the registration state ⸺ here, Louisiana's 10-year liberative prescription ⸺ and it starts to run on the date of registration.

This accords with the Stanford court's further statement:

> It seems to be conceded that the purposes of § 1963 were to simplify and facilitate the enforcement of federal judgments, at least those for money, to eliminate the necessity and expense of a second lawsuit, and to avoid the impediments, such as diversity of citizenship, which new and distinct federal litigation might otherwise encounter.[22]

Thus, once a money judgment of a federal district court in one state is registered in the federal district court of another state at a time when neither state's statute of limitations (prescriptive

---

[19] 721 F.2d at 1273.

[20] 341 F.2d at 269-70.

[21] 523 F.2d at 1289.

[22] Stanford, 341 F.2d at 270.

14

period) has expired, neither the limitation period of the rendering state nor the date the judgment became final in that state has any effect whatsoever on <u>enforcement</u> of the registered judgment <u>within the district of registration</u>. Rather, such enforcement proceedings following registration are governed exclusively by the limitation rules of the state in which the registration district is situated, as they would be applied to a judgment-on-judgment of the registration court. Therefore, enforcement proceedings on a registered judgment can be instituted in the registration court at any time before the expiration of that court's state-determined limitation (prescriptive) period, that such proceedings could be instituted on a new judgment —— including a judgment-on-judgment —— of the registration court. At least in Louisiana, that period starts to run on the date the judgment is <u>registered</u>.[23]

We simply cannot read the plain language of the final sentence of § 1963 —— "A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner" —— any way other than as equating registration with a new judgment-on-judgment, at least for purposes of enforcement within the district of

---

[23] Fed. R. Civ. P. 69 is the source provision for enforcing money judgments pursuant to the procedures of the state where the federal district court is located ("The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held...."). None can genuinely dispute that Louisiana's 10-year liberative prescription on enforcement of judgments is procedural and governs money judgments being enforced in federal courts located in Louisiana.

registration.  And we are firmly convinced regarding Louisiana, as was the Ninth Circuit in Marx regarding California law, that one feature of any new money judgment of the registration court —— including a judgment-on-judgment —— is that the limitation period for enforcement begins to run from entry of the new judgment, not from either the rendition of the original judgment or from its finality, whether by affirmance on appeal, by expiration of the time within which an appeal could have been filed, or by the date it was signed by the trial court.  In Louisiana, this means that prescription on enforcement of the registered judgment in the district of registration commences to run on the day of registration, just as such prescription would begin to run on a new judgment of the registration court.  The only thing that is governed by the statute of limitations of the rendering court is the time during which a judgment from the rendering court can be registered under § 1963 in the first place.[24]  It has no bearing on enforcement once registration is accomplished.

Thus, our only disagreement with the Report and Recommendation of the magistrate judge, as adopted by the district court, is with its position that, for purposes of enforcement of registered judgments in the registration court, Louisiana's 10-year liberative prescription begins to run from the date that the foreign judgment became eligible for registration, i.e., "when the [original money judgment] has become final...."[25]  This error is the result of an

---

[24] See, e.g., La. Civ. Code Ann. art. 3501.

[25] 28 U.S.C. § 1963.

16

impermissible cross-over between, on one hand, the limitation period for <u>registering</u> the judgment —— which, pursuant to § 1963,[26] is determined by the rendering state's law governing finality of judgments —— and, on the other hand, the limitation period for <u>enforcing</u> the registered judgment in the registration court, which is governed solely by the statute of limitations (prescription) of the registration state. Under the applicable Louisiana law —— Civil Code article 3501 —— Home Port had 10 years following registration of the 1989 judgment, i.e., March 17, 1999, within which to commence enforcement.[27]

Where the magistrate judge's Report and Recommendation went wrong was in treating the 1989 judgment as "the judgment" referred

---

[26] Section 1963 specifies the <u>earliest</u> date for registration of a money judgment rendered by a district court in another state ("when the judgment has become final by appeal or expiration of the time for appeal"), but does not expressly state the <u>latest</u> date, following finality, for registering such a judgment. Nevertheless, the last sentence of § 1963 must be read to provide the answer to that question. By specifying that the registered judgment shall have the same effect as a judgment of the registration court and may be enforced in like manner, the final sentence of § 1963 makes clear that, at a minimum, once the original judgment becomes registerable, it remains registerable for as long as it is "live," i.e., enforceable, in the rendering state <u>and</u> would be "live" were it to be registered in the registration state. That issue is not presented here, but the related question —— how long following registration can enforcement be commenced —— is the ultimate question of this appeal.

[27] <u>See</u> La. Civ. Code Ann. art. 3501. Inasmuch as the practice and procedure of Louisiana, specifically art. 2031 of the Louisiana Code of Civil Procedure, permits judgments to be re-inscribed and revived at any time prior to the running of prescription, Home Port could presumably extend the limitation period for enforcing the 1989 judgment within the Western District of Louisiana for subsequent prescriptive periods of ten years each by following the state procedure for revival of judgments. But this issue is not before us today.

17

to in the final clause of the first paragraph of art. 3501 ("[enforcement] is prescribed by the lapse of ten years from the time <u>the judgment</u> becomes final," (emphasis added)), rather than (correctly) treating registration as the equivalent of a new judgment and thus "the judgment" for purposes of § 1963.[28] Syllogistically speaking, (1) a new judgment of a federal district court situated in Louisiana can be enforced for a period of 10 years, (2) another district court's judgment registered in a federal district court situated in Louisiana has the same effect as the registration court's own judgment, ergo (3) a judgment registered in a federal district court situated in Louisiana can be enforced in that court for a period of 10 years. It follows then, that the district court's judgment in this case which would limit enforcement of the registered 1989 judgment to a period shorter than the period during which the registration court's own judgment could be enforced, i.e. less than 10 years, produces an impermissible inconsistency that is directly violative of § 1963's plain wording. Indeed, the intent of Congress in enacting § 1963 to equate registration with a judgment-on-judgment would be thwarted if, as the Report and Recommendation concluded, a judgment registered pursuant to § 1963 could be enforced for only two or three years following registration but a judgment-on-judgment of the same court of registration, rendered on the same day as the other judgment is registered, could be enforced for the full 10

---

[28] 28 U.S.C. § 1963 ("A judgment so registered shall have the same effect as a judgment of the district court for the district where registered and may be enforced in like manner.").

18

years —— anything but the "same effect" commanded by § 1963.  We hold that prescription of enforcement of a judgment registered pursuant to § 1963 in a federal district court located in Louisiana begins to run on registration, without regard to the date the underlying judgment was rendered or became final.[29]

We emphasize in closing that the issues we consider and rule on today implicate only the <u>enforcement</u> of a registered judgment from another federal district court in the registration court, and then only enforcement <u>within the district where the registration court is situated</u>.  We need not and therefore do not address or express an opinion on any effects of registration other than on enforcement within the geographical confines of the registration court's district —— not the effect on the creation of judicial mortgages or liens against property of the judgment debtor,[30] not the effect on portability; and not the effect on revival, re-

---

[29] Although it makes no difference to the outcome of the instant case, we note in passing that, given Moore's failure to appeal the 1989 judgment, it became final as to him when his time for appeal expired and likely did so retroactively to date of entry.  Thus, under no reading of § 1963 or art. 3501 could April 2, 1992 have been the date of finality of the 1989 judgment vis-à-vis Moore.  Even though that is the date of finality for those judgment debtors who appealed, the 1989 judgment became final as to Moore when the time for appealing ran out without Moore's timely filing a notice of appeal pursuant to Fed. R. App. P. 4 —— and likely did so retroactively to entry of judgment for purposes of time bar on enforcements.  Moreover, if art. 3501 were applicable, its 10-year prescription would have commenced when the judgment, unappealed by Moore, was "signed."

[30] <u>See</u> 28 U.S.C. § 1962 (2001).

inscription or renewal:[31]  just the effect on the time and timing of local enforcement.

## III. Conclusion

Home Port's March 17, 1999 registration, in the Western District of Louisiana, of the 1989 judgment against Moore et al was timely for purposes of § 1963 because, inter alia, it was still a "live" judgment under the limitation laws of both the rendering jurisdiction (South Carolina) and the registration jurisdiction (Louisiana).  Thus, such registration in the federal court in Louisiana, after the 1989 judgment had become final as to Moore and thus registerable under § 1963, made that judgment the equivalent of a judgment originally rendered by the registration court as far as local enforcement is concerned.  Specifically, such registration made the 1989 judgment enforceable within the Western District of Louisiana to precisely the same extent, in precisely the same manner, and for precisely the same length of time, as an original judgment — including a judgment-on-judgment — of the registration court.

Therefore, applying as we must the law of Louisiana regarding the time and location for enforcing a judgment of a federal district court situated in that state, we hold that the 1989 judgment became enforceable in the Western District of Louisiana for a period of 10 years commencing on March 17, 1999, the day it was registered in that court.  We therefore affirm the district court's denial of Moore's motion to dismiss Home Port's petitions

---

[31] See La. Civ. Code Ann. art. 2031 (West 2001).

20

seeking registration and enforcement; <u>modify</u> the judgment of the district court to declare that Home Port can enforce the 1989 judgment in the Western District of Louisiana until March 17, 2009; and, as thus modified, <u>affirm</u> the judgment of the district court. Finally, we remand this case to the district court for further proceedings consistent with this opinion.

MODIFIED in part; AFFIRMED as modified; REMANDED for further consistent proceedings.

S:\OPINIONS\PUB\00\00-30610.CV0

4/26/01  3:03 PM