**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2182**

WELLS FARGO EQUIPMENT FINANCE, INCORPORATED,

        Plaintiff - Appellee,

    v.

NABIL J. ASTERBADI,

        Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, District Judge. (8:15-cv-01371-PWG)

Argued: September 20, 2016          Decided: November 4, 2016

Before NIEMEYER and DIAZ, Circuit Judges, and Irene M. KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Diaz and Judge Keeley joined.

**ARGUED**: David B. Lamb, Washington, D.C., for Appellant. Steven Neal Leitess, LEITESS FRIEDBERG PC, Baltimore, Maryland, for Appellee. **ON BRIEF**: David A. Donohoe, Potomac, Maryland, for Appellant. Gordon S. Young, Pierce C. Murphy, LEITESS FRIEDBERG PC, Baltimore, Maryland, for Appellee.

NIEMEYER, Circuit Judge:

In this appeal, we address the enforceability of a judgment originally entered in the Eastern District of Virginia but registered for enforcement in the District of Maryland under 28 U.S.C. § 1963. Particularly, we consider the time period during which the judgment remains enforceable in Maryland.

Collecting on a financing debt incurred by Dr. Nabil J. Asterbadi, CIT/Equipment Financing, Inc. ("CIT") obtained a $2.63 million judgment against Asterbadi in 1993, in the Eastern District of Virginia. Under Virginia law, that judgment remained viable for 20 years. Roughly 10 years after the judgment had been entered, on August 27, 2003, CIT registered the judgment in the District of Maryland pursuant to § 1963. Under Maryland law, made relevant by Federal Rule of Civil Procedure 69(a), judgments expire 12 years after entry.

CIT sold the judgment to Wells Fargo Equipment Finance, Inc., and Wells Fargo thereafter, in April 2015, began collection efforts in Maryland. Asterbadi filed a motion for a protective order, contending that the judgment was unenforceable because the efforts began more than 12 years after the judgment had originally been entered in Virginia. Wells Fargo responded that the registration of the Virginia judgment in Maryland before it had expired under Virginia law became, in effect, a new judgment that was subject to Maryland law for enforcement.

2

Thus, it argued, Maryland's 12-year limitations period began on the date that the judgment was registered in Maryland, not on the date that the original judgment was entered in Virginia, and therefore the judgment was still enforceable.

The district court agreed with Wells Fargo, concluding that the time limitation for enforcement of the judgment began with the date of its registration in Maryland, on August 27, 2003, and that therefore it was still enforceable against Asterbadi.

For the reasons that follow, we affirm.

I

The judgment was entered on October 4, 1993, against Asterbadi in the Eastern District of Virginia and arose from a defaulted debt that Asterbadi incurred to invest in an airplane. It was entered in the amount of "$2,286,009.97, plus interest from May 31, 1993 on the sum of $2,184,950 at the rate of 1.5% per month, and attorney's fees of $347,742.50." Under Virginia law, the judgment remained enforceable for 20 years, or until October 4, 2013. See Va. Code Ann. § 8.01-251(A).

While Asterbadi made a number of payments on the judgment during the period shortly after it was entered, the judgment has, in substantial part, remained unsatisfied. In furtherance of its collection efforts, CIT registered the judgment in the District of Maryland on August 27, 2003, pursuant to 28 U.S.C.

3

§ 1963. It also recorded the judgment in state courts in Fairfax County, Virginia; Prince George's County, Maryland; Montgomery County, Maryland; and the District of Columbia, under the law of those jurisdictions. At the time that CIT registered its judgment in the District of Maryland, Asterbadi still owed some $1.75 million, much of which represented interest.

Several months later, on October 31, 2003, CIT undertook collection efforts in Maryland to execute on stock that Asterbadi held in Zachair, Ltd. To this end, it filed a motion in the district court for an injunction prohibiting Asterbadi "from transferring the [stock] Certificates and ordering him to turn over the Certificates to CIT." In response, Asterbadi, who explained that he was a physician who had made "an ill-fated investment in an airplane over 15 years ago," claimed that CIT had overstated the amount owed on the judgment. He also asserted that his stock in Zachair was owned with his wife as tenants by the entireties and therefore was not subject to execution on the judgment. Nonetheless, he stated that he "ha[d] no intention, and will not transfer, any shares of stock in which he has any interest" and that he had no objection to the entry of an order "which would preclude any such transfers." He did not, however, agree to an order transferring the stock certificates to CIT. No further action was taken on the motion for more than 10 years.

4

Effective June 29, 2007, CIT sold and assigned its judgment against Asterbadi to Wells Fargo as part of an asset purchase agreement. Some years later, Wells Fargo renewed collection efforts. In preparation for collection in Maryland, Wells Fargo filed a notice of the assignment, as well as a copy of the assignment, in the Circuit Court for Montgomery County on April 1, 2015. And on April 7, 2015, it filed a "Notice of Assignment" in the district court, although without including a copy of the assignment. After Wells Fargo filed the notice of the assignment, it noticed the deposition of Zachair, whose stock Asterbadi held.

Asterbadi filed a motion for protective order on May 8, 2015, contending that the Virginia judgment was not enforceable, as Wells Fargo was seeking to enforce a judgment "entered more than 21 years ago in Virginia," which was beyond both Virginia's and Maryland's statute of limitations for enforcing judgments. He concluded that if the judgment was unenforceable, "there can be no post-judgment discovery." He acknowledged that, if the limitations period began on the date of registration, a judgment registered in the District in Maryland might still be enforceable under Maryland Rule 2-625, which provides that a money judgment expires 12 years from the date of entry. But he argued that the registration of the judgment in Maryland was "nothing more" than "ministerial" and that it "does not have the

5

effect of entering a 'new judgment'" with a new enforceability period. Thus, he reasoned that any applicable limitations period began at the time of the judgment's entry in 1993 and therefore that the judgment was unenforceable.

In view of Asterbadi's arguments, the district court entered an order requiring Wells Fargo to show cause "why this matter is not subject to dismissal" for the reasons given by Asterbadi. Wells Fargo responded, arguing that "once a [viable] foreign judgment is recorded in the [District of Maryland], that judgment remains effective and enforceable for the time period provided by Maryland law -- 12 years unless earlier renewed for another 12 year period" -- from the date registered. Therefore, it claimed, the judgment was enforceable to August 27, 2015.

Asterbadi filed a reply and shortly thereafter a supplement to his reply, asserting in his supplement the additional argument that Wells Fargo did not have standing to enforce the judgment because, while it filed a notice of the assignment of the judgment in the district court, it did not file a copy of the assignment itself, as required by Maryland Rule 2-624. He attached to his supplement an actual copy of the assignment that Wells Fargo had filed in Montgomery County, Maryland.

While the proceedings were pending, Wells Fargo filed a renewal of its registered judgment in the district court on

6

August 26, 2015, which, it contends, extended the enforceability of its judgment under Maryland law to 2027.

By order dated September 16, 2015, the district court rejected Asterbadi's argument that Wells Fargo lacked standing to enforce the judgment, noting that Asterbadi himself had provided the court with a copy of the assignment that had been filed in the Circuit Court for Montgomery County and therefore that "Wells Fargo ha[d] standing [to] respond to my show cause order regarding the enforceability of the 1993 Judgment." The district court also rejected Asterbadi's argument that when discovery was commenced in 2015, the judgment was unenforceable because the Maryland limitation of 12 years had run. Relying on Home Port Rentals, Inc. v. International Yachting Group, Inc., 252 F.3d 399 (5th Cir. 2001), the court held that "the [Maryland] statute of limitations in this case started to run on the date that the judgment was registered in this Court, August 27, 2003, and is currently enforceable against the Defendant." (Emphasis added). With respect to the motion for injunction that had been pending since 2003, the court enjoined Asterbadi from transferring his stock certificates in Zachair -- relief to which Asterbadi had earlier consented -- but denied, without prejudice, Wells Fargo's request that Asterbadi be required to turn those certificates over to it.

7

Asterbadi noticed this appeal from the district court's September 16, 2015 order. After Asterbadi noticed his appeal from that order, the district court entered a separate order on October 14, 2015, denying, without prejudice, Asterbadi's motion for a protective order against discovery, pending this appeal.

## II

Both parties raise jurisdictional issues. Wells Fargo contends that Asterbadi appealed only the September 16, 2015 order, which entered an injunction to which Asterbadi had earlier consented, and not the court's denial of the motion for a protective order, entered on October 14, 2015. And Asterbadi contends that Wells Fargo lacks standing to enforce its judgment against him because Wells Fargo filed only a notice of assignment in the district court, not a copy of the assignment itself, and therefore failed to comply with Maryland Rule 2-624, which entitles parties filing <u>an assignment</u> to pursue enforcement in their own name. We address these issues in order.

## A

In its September 16, 2015 order, the district court granted in part and denied in part CIT's original motion for an injunction, a result to which Asterbadi had consented in his original response to the motion for an injunction. After

8

Asterbadi filed an appeal from that order, the district court entered a separate order dated October 14, 2015, denying Asterbadi's motion for a protective order to halt Wells Fargo's discovery efforts. Wells Fargo now argues that Asterbadi should have appealed the second order and that, because he never did so, his appeal should be dismissed.

The filing of a proper notice of appeal is indeed "jurisdictional in nature and . . . is a prerequisite to appellate review." Smith v. Barry, 502 U.S. 244, 248 (1992). Federal Rule of Appellate Procedure 3 requires that the notice of appeal "designate," among other information, "the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). And even though "[c]ourts will liberally construe the requirements of Rule 3," Barry, 502 U.S. at 248, we generally confine our review to the order designated in the notice of appeal, cf. Bogart v. Chapell, 396 F.3d 548, 554 (4th Cir. 2008) ("[W]e are obliged to identify those particular matters over which we possess jurisdiction").

In this case, however, Asterbadi was justified in presenting his issues in connection with his appeal from the district court's September 16, 2015 order. While he had not objected to the form of the injunctive relief entered, he maintained that the court lacked the ability to grant any injunctive relief because, as he argued, the judgment against

9

him was unenforceable. In the September 16, 2015 order, the district court explicitly rejected two of Asterbadi's arguments -- that Wells Fargo lacked standing to enforce the judgment and that limitations for enforcement of the judgment had run. Those rulings were necessary conditions precedent if the district court were to grant any injunctive relief, as it did in the September 16, 2015 order. Accordingly, we conclude that Asterbadi's appeal of that order allows him to challenge the district court's rulings on these two conditions that were necessary for granting injunctive relief.

B

Asterbadi contends that because Wells Fargo did not comply with Maryland Rule 2-624, it was not entitled to step into the shoes of CIT, which had obtained the judgment against Asterbadi in the first place. That Rule provides that the assignee of a judgment may enforce the judgment <u>in its own name</u> when it files "<u>the assignment</u> . . . in the court where the judgment was entered." Md. Rule 2-624 (emphasis added). Accordingly, he maintains, Wells Fargo has no standing to enforce CIT's judgment in its own name.

It is important to note that, while Asterbadi's argument raises a question of federal law, Federal Rule of Civil Procedure 69(a)(1) incorporates the state law of the

10

jurisdiction where enforcement is sought for the procedure to be followed in enforcing money judgments. Cf. 28 U.S.C. § 1962 (incorporating state law for determining judgment liens on property located in the State). Accordingly, because federal law so requires, it is appropriate that we look to Maryland Rule 2-624.

Whether a "notice" of assignment is sufficient to satisfy the filing of "the assignment," as provided in Rule 2-624, is not a question that we need to resolve here. As the district court observed, while Wells Fargo filed only a notice of assignment in the district court, Asterbadi filed the actual assignment, which had previously been filed in state court, so that the district court had before it both the notice of assignment and the assignment itself. While the procedure by which the district court received the assignment might have been awkward, that awkwardness did not deprive Wells Fargo of standing to enforce the judgment that it had purchased.

III

On the merits, the parties agree on several threshold issues. First, the original $2.63 million judgment in this case was entered on October 4, 1993, in the Eastern District of Virginia, and, under Virginia law, it remained enforceable for 20 years from the date of entry. Va. Code. Ann. § 8.01-251.

11

Second, roughly 10 years later, on August 27, 2003, CIT, the judgment holder at the time, registered the judgment in the District of Maryland pursuant to 28 U.S.C. § 1963. Third, Maryland law provides that a money judgment expires 12 years from the date of entry or from the date of renewal, if it is renewed before its expiration. Md. Rule 2-625. Finally, Maryland's 12-year limitation governs the enforcement of this judgment in the District of Maryland.

Against these undisputed propositions, Asterbadi argues that even though the Virginia judgment, when registered in Maryland, was governed by Maryland's 12-year limitation, the 12-year limitation period began to run at the time when the original judgment was entered in Virginia, i.e., on October 4, 1993. Under his argument, the enforceability of the registered judgment in Maryland expired 12 years after 1993, or on October 4, 2005.

Wells Fargo contends that when the Virginia judgment was registered in Maryland, it became, in effect, a new judgment governed by Maryland's 12-year limitations period, which began running on the date of registration, August 27, 2003.

To resolve the dispute, we begin with § 1963 itself, under which the Virginia district court judgment was registered in the Maryland district court. Section 1963 provides in relevant part:

12

> A judgment in an action for the recovery of money
> . . . entered in any . . . district court . . . may be
> registered by filing a certified copy of the judgment
> in any other district . . . . A judgment so
> registered shall have the same effect as a judgment of
> the district court of the district where registered
> and may be enforced in like manner.

28 U.S.C. § 1963. The statute was enacted in 1948 as a device to streamline the more awkward prior practice of bringing suit on a foreign judgment and thereby obtaining a new judgment on the foreign judgment. As then-Circuit Judge Harry Blackmun observed:

> It seems to be conceded that the purposes of § 1963
> were to simply facilitate the enforcement of federal
> judgments, at least those for money, to eliminate the
> necessity and expense of a second lawsuit, and to
> avoid the impediments, such as diversity of
> citizenship, which new and distinct federal litigation
> might otherwise encounter.

Stanford v. Utley, 341 F.2d 265, 270 (8th Cir. 1965); see also Home Port Rentals, 252 F.3d at 404 (noting that Congress explicitly enacted § 1963 to spare litigants the inefficiencies of obtaining a judgment on a judgment); Stiller v. Hardman, 324 F.2d 626, 628 (2d Cir. 1963) (noting that § 1963 provides "a speedier and more efficient mechanism for the enforcement of federal judgments" than the practice of obtaining a judgment on a judgment); S. Rep. No. 83-1917 (1954), as reprinted in 1954 U.S.C.C.A.N. 3142, 3142 (explaining that § 1963 was enacted to spare creditors and debtors alike "the additional cost and harassment of further litigation which would otherwise be

13

required by way of an action on the judgment in a district other than that where the judgment was originally obtained").

Thus, instead of requiring the holder of a Virginia judgment to file a complaint in the Maryland district court on the basis of the Virginia judgment, thereby engaging the federal process to obtain a new judgment enforceable in the District of Maryland, § 1963 allows the judgment holder simply to register the Virginia judgment in Maryland but to retain the benefits of obtaining a judgment under the former practice of suing on a judgment to obtain a new judgment. Indeed, § 1963 explicitly so provides, stating that a district court judgment registered in another district court "shall have the same effect as a judgment of the district court . . . and may be enforced in like manner." 28 U.S.C. § 1963 (emphasis added).

We thus construe § 1963 to provide for a new judgment in the district court where the judgment is registered, as if the new judgment had been entered in the district after filing an action for a judgment on a judgment. Accordingly, just as a new judgment obtained in an action on a previous judgment from another district would be enforceable as any judgment entered in the district court, so too is a registered judgment. The other courts of appeals that have construed § 1963 have reached the same conclusion. See, e.g., In re Estate of Ferdinand E. Marcos Human Rights Litig., 536 F.3d 980, 989 (9th Cir. 2008)

14

("[R]egistering a judgment under § 1963 is the functional equivalent of obtaining a new judgment of the registration court" (emphasis added)); Home Port Rentals, 252 F.3d at 405 ("[R]egistration truly is the equivalent of a new judgment of the registration court" (emphasis added)); Stanford, 341 F.2d at 268 ("We feel that registration provides, as far as enforcement is concerned, the equivalent of a new judgment of the registration court" (emphasis added)).

With this understanding of § 1963, we apply the principles applicable to any money judgment entered in a district court. Under Rule 69(a), the judgment is enforceable in accordance with state law, and in this case Maryland law provides that "a money judgment expires 12 years from the date of entry or most recent renewal." Md. Rule 2-625. Accordingly, the registered judgment in this case would have expired 12 years from August 27, 2003, or on August 27, 2015. And because Wells Fargo renewed the judgment for another 12 years on August 26, 2015, the registered judgment remains enforceable in Maryland to August 26, 2027.

Asterbadi argues that registration is merely a "ministerial act" that is carried out as a matter of procedure to enforce the Virginia district court judgment, and therefore the original Virginia judgment is actually the judgment Wells Fargo seeks to enforce, even if that judgment is admittedly subject to the Maryland 12-year limitation. Thus, he argues, the 12 years

15

began running when the Virginia judgment was entered, as stated in Maryland Rule 2-625 (providing that a "judgment expires 12 years from the date of entry" (emphasis added)). This argument, however, overlooks the effect of registration under § 1963. If registration were merely a ministerial act to enforce the Virginia judgment in Maryland, there would be no need for the statute to have added the language that the registered judgment functions the same as a judgment entered in the registration court. With that language, § 1963 elevates the registered Virginia judgment to the status of a new Maryland judgment, and it is accordingly enforced as a new judgment entered in the first instance in Maryland.

The Stanford court likewise expressly rejected Asterbadi's "ministerial act" characterization of § 1963:

> We have concluded that § 1963 is more than "ministerial" and is more than a mere procedural device for the collection of the foreign judgment. We feel that registration provides, so far as enforcement is concerned, the equivalent of a new judgment of the registration court.

341 F.2d at 268. And the Stanford court gave the same reasons that we do in reaching this conclusion:

> To restrict registration to a procedural and collection device for the foreign judgment itself, and to have it expire with the foreign judgment, would give the words of the statute a lesser status than their plain meaning and to make registration something far inferior to a judgment on a judgment.

16

<u>Id.</u> at 270 (emphasis added). Again, as all the courts of appeals have noted, the purpose of § 1963 was to give the same effect achieved by a judgment on a judgment but without the excessive process.

Asterbadi also argues that we should construe § 1963 in the same manner as courts have construed the Uniform Enforcement of Foreign Judgments Act, which facilitates the enforcement of one State's judgment in the courts of another State. <u>See, e.g.</u>, Md. Code Ann., Cts. & Jud. Proc. §§ 11-801 to 11-807. He claims that some courts have construed the Uniform Act or similar state statutes in a manner that distinguishes between registering a judgment and suing on a judgment, with the former subject to the limitations of the state where the judgment was originally entered and the latter subject to the limitations of the state where the new judgment was obtained. While we do not assume that this construction is an accurate one, <u>see, e.g.</u>, Revised Unif. Enforcement of Foreign Judgments Act prefatory note (Unif. Law Comm'n 1964), we are nonetheless not construing the Uniform Act, but rather § 1963. And we construe § 1963 to elevate a registered money judgment such that it functions in every way as a new judgment. It follows that with the registered judgment functioning as a new judgment, the limitations period for enforcement runs from the date of registration. This is the conclusion that every court of appeals that has construed § 1963

17

has reached. See, e.g., Home Port Rentals, 252 F.3d at 407 (holding that "the applicable limitation law for purposes of enforcement of the registered judgment in the registration district is that of the registration state . . . and it starts to run on the date of registration"); see also In re Estate of Marcos Human Rights Litig., 536 F.3d at 989; Stanford, 341 F.2d at 268.

Finally, Asterbadi proposed during oral argument numerous horribles that he envisions will result from the fact that creditors will be able repeatedly to restart a statute of limitations through the simple act of registration, defeating any purpose for the limitation. The posited consequences, however, are no different than have always existed under the more burdensome process of suing on an original judgment to obtain a new judgment in the enforcement jurisdiction. When the new judgment was entered, it carried with it the limitations period then applicable to judgments in the State of entry. Moreover, creditors in many States -- including in Maryland -- are also able to renew existing judgments indefinitely and thus extend enforcement with new limitations periods without any adversarial process. See, e.g., Md. Rule 2-625 (requiring only that the "judgment holder . . . file a notice of renewal" at any time before expiration of the judgment or a previous renewal,

18

without any limit on the number of renewals that might be filed).

In sum, we hold that the registration of the Virginia district court judgment in the District of Maryland at a time when the judgment was not time-barred by Virginia law functions as a new judgment in the District of Maryland, and Maryland's 12-year limitations period for enforcement on the judgment begins running from the date of registration.

Accordingly, the district court's September 16, 2015 order is

AFFIRMED.