*Thomas H. Stevenson v. Edgefield Holdings, LLC*, No. 914, September Term 2018.
Opinion by Wells, J.

**CIVIL LAW – POST-JUDGMENT – GARNISHMENT – JOINT ACCOUNTS & UNIFORM ENFORCEMENT OF FOREIGN JUDGMENTS ACT**

Under Maryland Code, (1974, 2013 Repl. Vol.) Courts and Judicial Proceedings § 11-603(a)(1), when executing a judgment, property held jointly by spouses in a bank, trust company, credit union, savings bank, or savings and loan association is not subject to garnishment. The General Assembly has provided one exception under Courts and Judicial Proceedings §11-603(a)(2): when executing a judgment, property held jointly by spouses in these accounts is subject to garnishment if the joint account was not established "prior to the date of entry of judgment giving rise to the garnishment." To determine whether this exception applies to a foreign judgment recognized in Maryland under the Uniform Enforcement of Foreign Judgments Act, Courts and Judicial Proceedings §11-801 through 11-807, we hold that the date of entry of judgment giving rise to the garnishment is the date that a Maryland court recognizes the foreign judgment. Only then may the judgment be enforced by garnishment.

Circuit Court for Talbot County
Case No. C-20-JG-17-442

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 914

September Term, 2018

_____

THOMAS H. STEVENSON

v.

EDGEFIELD HOLDINGS, LLC.

_____

Arthur,
Wells,
Gould,

JJ.*

_____

Opinion by Wells, J.

_____

Filed: February 28, 2020

*Kehoe, Christopher B., J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On October 6, 2009, a court in Duval County, Florida, entered a judgment in the amount of $169,550.25, plus post-judgment interest, against appellant, Thomas Stevenson, a guarantor on a business loan held by Atlantic Coast Bank ("Atlantic Coast"). Atlantic Coast sued Mr. Stevenson after a default on the note. Mr. Stevenson's wife, Leslie Stevenson, was not a party to the loan.

On November 22, 2017, Atlantic Coast's successor in interest, appellee, Edgefield Holdings, L.L.C. ("Edgefield"), registered the Florida judgment in Maryland. Edgefield sought to satisfy the debt by garnishing the Stevensons' joint bank accounts which they had opened in Maryland in 2013 and 2016.

Before the Circuit Court for Talbot County, Mr. Stevenson challenged the garnishment, asserting that Maryland Code, Courts and Judicial Proceedings Article ("C&JP") § 11-603 (1974, 2013 Repl. Vol.) prohibits a judgment creditor from garnishing a joint account like the Stevensons' if: (1) one of the joint account holders is not a judgment debtor, and (2) the account "was established as a joint account prior to the date of entry of judgment giving rise to the garnishment." C&JP § 11-603(b). Mr. Stevenson argued that his wife is not a judgment debtor and their bank accounts were established before November 22, 2017, the date that Edgefield registered the judgment in Maryland.

Edgefield argued that the "date of entry of judgment" is the date that its predecessor in interest, Atlantic Coast, obtained the original judgment in Florida: October 6, 2009. The circuit court found for Edgefield and enforced the garnishment.

Mr. Stevenson filed a timely appeal and asks two questions:

1. What is the proper entry date of a foreign judgment filed for recordation in Maryland?

2. Even if the judgment was entered in 2009, did Mrs. Stevenson's exclusive use of the Shore United Bank Accounts render them exempt from garnishment?

For the reasons that follow, we conclude that in interpreting C&JP § 11-603, "the date of entry of judgment giving rise to the garnishment" is the date that the judgment is registered in Maryland. We, therefore, reverse the circuit court. We decline to answer question 2.

## FACTUAL AND PROCEDURAL BACKGROUND

Thomas Stevenson was one of several guarantors of a business loan obtained by a third party with Atlantic Coast. When the third party defaulted on the note, Atlantic Coast sued in the Circuit Court for the Fourth Judicial Circuit of Florida to recover the unpaid balance. Atlantic Coast also sued Mr. Stevenson as a guarantor of the note.

On April 16, 2009, the Florida circuit court entered a default judgment against Mr. Stevenson. On October 6, 2009, the court entered a final judgment against Mr. Stevenson, jointly and severally with the original borrower and the other guarantors in the amount of $169,550.25, plus post-judgment interest at the rate of 8% ("the Florida judgment").

Four years later, on June 28, 2013, Mr. and Mrs. Stevenson opened a joint checking account at Shore United Bank ("Shore Bank"), located in Talbot County, Maryland. The Stevensons later opened a money market account on June 9, 2016 at the same bank.

Between the opening of these two accounts, on July 7, 2015, Atlantic Coast assigned the Florida judgment to Edgefield. On November 20, 2017, Edgefield, with a certified copy of the Florida judgment in hand, requested registration of that judgment in the Circuit Court for Talbot County. On November 22, 2017, the circuit court recorded the Florida judgment and notified the parties.

On January 12, 2018, Edgefield sought to satisfy the Florida judgment by requesting a writ of garnishment against the Stevensons' joint accounts at Shore Bank. Five days later, January 17, 2018, the circuit court issued the writ. Shore Bank filed an answer to the garnishment pursuant to Maryland Rule 2-645(e) stating that,

> both accounts are in the name of two (2) or more persons, one (1) or more of whom but fewer than all of whom, are judgment debtors .… pursuant to Md. Code Ann. Cts. & Jud. Proc. Art. § 11-603, Garnishee is holding in said accounts the amounts of $20,279,14 and $39,003.53, respectively, pending further order of the court.

"Garnishee's Confession of Assets of Property Other Than Wages," 1/24/2018.

On January 26, 2018, Mr. Stevenson moved to dismiss, or, in the alternative, vacate the writ of garnishment. In his motion, Mr. Stevenson stated that he did not learn of the garnishment until his accounts at Shore Bank were frozen. Mr. Stevenson argued that C&JP § 11-603(a) prohibited Edgefield from garnishing the joint bank accounts he held with his wife. Accompanying the motion was an affidavit from Leslie Stevenson. She testified that she was Mr. Stevenson's wife. She was not a party or subject to the Florida judgment. She held the funds at Shore Bank jointly with her husband. They opened the

accounts before the entry date of the judgment. And, her business and personal affairs would be prejudiced if the writ was not dismissed or vacated. Edgefield responded that, in fact, the Stevensons opened their joint accounts after judgment was entered in Florida.

The Circuit Court for Talbot County held a hearing on the motion for final judgment on June 19, 2018.[1] At the hearing, Mr. Stevenson argued that the court should consider the now-enrolled Florida judgment to be a second, or new judgment in Maryland enforceable from the date it was registered here. Mr. Stevenson also argued that the Florida judgment was not yet enforceable because a Maryland court must first establish personal jurisdiction over him prior to issuing a writ of garnishment. In Mr. Stevenson's opinion, Maryland did not acquire personal jurisdiction over him until after the Florida judgment was registered here.

Edgefield argued that if the court found that the entry date of judgment was the date the judgment was registered in Maryland, such a decision would allow judgment debtors to evade creditors by moving from jurisdiction to jurisdiction. Edgefield asserted that giving full faith and credit to Florida's judgment meant recognizing Florida's date of entry of judgment as the operative date.

---

[1] The court refers to the hearing as being on the motion to alter or amend the final judgment. However, by the time of the hearing, the previous order on the motion for final judgment had been vacated. Thereafter, Mr. Stevenson filed an opposition to final judgment. Edgefield replied in support of final judgment. It follows, therefore, that the hearing was a hearing on the final judgment, rather than to alter or amend.

- 4 -

At the end of the hearing, in an oral ruling, the court concluded that the Full Faith and Credit Clause of the United States Constitution obligated it to find that the date Florida entered a final judgment, October 6, 2009, was the date on which the judgment became effective. Consequently, the court ruled in Edgefield's favor and enforced the garnishment. Mr. Stevenson appealed.

**DISCUSSION**

Mr. Stevenson appeals from the circuit court's finding that the "date of entry of judgment giving rise to the garnishment" found in C&JP § 11-603(a) was the date that the judgment was established in Florida, rather than the date that the Florida judgment was registered in Maryland. As the decision here was rendered by a judge and not a jury, Maryland Rule 8-131(c) controls. That rule states:

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The rule permits us to set aside a trial court's factual determinations if they are clearly erroneous. But the rule also requires us to exercise our independent appraisal of the court's application of the law employing the least deferential standard of review. We have consistently held that "we review … legal conclusions de novo to determine if they were legally correct." *Lee v. Lee*, 240 Md. App. 47, 70 (2019) *aff'd*, __ Md. __, No. 13 (filed Jan. 23, 2020)(citing *Walter v. Gunter*, 367 Md. 386, 392 (2002) ("[W]here the order involves an interpretation and application of Maryland statutory and case law, our Court

- 5 -

must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review.").

### A. <u>C&JP § 11-603</u>

As has been noted, the relevant statute at issue is C&JP § 11-603(a) which states:

(1) Except as provided in paragraph (2) of this subsection, a garnishment against property held jointly by husband and wife, in a bank, trust company, credit union, savings bank, or savings and loan association or any of their affiliates or subsidiaries is not valid unless both owners of the property are judgment debtors.

(2) Paragraph (1) of this subsection does not apply unless the property is held in an account that was established as a joint account prior to the date of entry of judgment giving rise to the garnishment.

When interpreting the meaning of a statute, the Court of Appeals has instructed that our paramount duty is "to discern and carry out the intent of the Legislature." *Blue v. Prince George's County*, 434 Md. 681, 689 (2013). "The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Kushell v. Dep't of Natural Resources*, 385 Md. 563, 576 (2005) (citing *Collins v. State*, 383 Md. 684, 688 (2004)). "Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Adventist Health Care v. Maryland Health Care Comm'n*, 392 Md. 103, 124 n. 13 (2006) (internal quotation marks and citations omitted). When a statute's language is unambiguous, we need only to apply the statute as written, and our efforts to ascertain the legislature's intent end there. *Id.* at 125; *Price v. State*, 378 Md. 378, 387 (2003). As the Court of Appeals stated in *Blue*, *supra*,

Text is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity. Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute. An examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality.

434 Md. at 689 (*quoting Town of Oxford v. Koste*, 204 Md. App. 578, 585-86 (2012), *aff'd,* 431 Md. 14 (2013) (citations omitted)).

The parties agree that this is a case of first impression. The phrase "the date of entry of judgment giving rise to the garnishment" has not been interpreted by a Maryland court. Interpretation of C&JP § 11-603(b) will require us to examine Maryland's version of the Uniform Enforcement of Foreign Judgments Act ("UEFJA") found in C&JP §§ 11-801 through 807, both federal and state cases that discuss the two statutes, and the Maryland Rules. Based on this analysis, we conclude that "the entry date of judgment giving rise to the garnishment" found in C&JP § 11-603 is the date on which a clerk of court enters the foreign judgment into Maryland's electronic case management or "MDEC" system under Rule 2-601.

### B. The UEFJA

The Full Faith and Credit Clause of the U.S. Constitution provides:

Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const. Art. IV, § 1.

"In order to facilitate the recognition and enforcement of judgments across state lines, in 1948 the National Conference of Commissioners on Uniform State Laws, and the American Bar Association, proposed the Uniform Enforcement of Foreign Judgments Act." *Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of North America, Inc.*, 356 Md. 542, 553 (1999). The UEFJA was subsequently revised in 1964.[2] The purpose of the

---

[2] **REVISED UNIFORM ENFORCEMENT OF FOREIGN JUDGMENTS ACT**
**Section 1.** [ *Definition.*] In this Act "foreign judgment" means any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state.
**Section 2.** [*Filing and Status of Foreign Judgments.*] A copy of any foreign judgment authenticated in accordance with the act of Congress or the statutes of this state may be filed in the office of the Clerk of any [District Court of any city or county] of this state. The Clerk shall treat the foreign judgment in the same manner as a judgment of the [District Court of any city or county] of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a [District Court of any city or county] of this state and may be enforced or satisfied in like manner.
**Section 3.** [*Notice of Filing.*]
(a) At the time of the filing of the foreign judgment, the judgment creditor or his lawyer shall make and file with the Clerk of Court an affidavit setting forth the name and last known post office address of the judgment debtor, and the judgment creditor.
(b) Promptly upon the filing of the foreign judgment and the affidavit, the Clerk shall mail notice of the filing of the foreign judgment to the judgment debtor at the address given and shall make a note of the mailing in the docket. The notice shall include the name and post office address of the judgment creditor and the judgment creditor's lawyer, if any, in this state. In addition, the judgment creditor may mail a notice of the filing of the judgment to the judgment debtor and may file proof of mailing with the Clerk. Lack of mailing notice of filing by the Clerk shall not affect the enforcement proceedings if proof of mailing by the judgment creditor has been filed.
[(c) No execution or other process for enforcement of a foreign judgment filed hereunder shall issue until [ ] days after the date the judgment is filed.]
**Section 4.** [*Stay.*]
(a) If the judgment debtor shows the [District Court of any city or county] that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution has been granted, the court shall stay enforcement of the foreign judgment until the appeal is

UEFJA was to streamline the registration process of judgments from state to state. In the words of the prefatory note, the

> 1964 revision of the Uniform Enforcement of Foreign Judgments Act adopts the practice which, in substance, is used in Federal courts. It provides the enacting state with a speedy and economical method of doing that which it is required to do by the Constitution of the United States. It also relieves creditors and debtors of the additional cost and harassment of further litigation which would otherwise be incident to the enforcement of the foreign judgment. This act offers the states a chance to achieve uniformity in a field where uniformity is highly desirable. Its enactment by the states should forestall Federal legislation in this field.

National Conference of Commissioners on Uniform State Laws, Final Act 1 (1964). The UEFJA derives its authority from the Full Faith and Credit Clause of the U.S. Constitution which requires each state to recognize and potentially enforce the judgments and official acts of every other state. *See Mike Smith Pontiac*, 356 Md. at 550 ("Under the Full Faith and Credit clause, a foreign judgment cannot be enforced directly in a sister state but must

---

concluded, the time for appeal expires, or the stay of execution expires or is vacated, upon proof that the judgment debtor has furnished the security for the satisfaction of the judgment required by the state in which it was rendered.
(b) If the judgment debtor shows the [District Court of any city or county] any ground upon which enforcement of a judgment of any [District Court of any city or county] of this state would be stayed, the court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this state.
**Section 5.** [*Fees.*] Any person filing a foreign judgment shall pay to the Clerk of Court _____ dollars. Fees for docketing, transcription or other enforcement proceedings shall be as provided for judgments of the [District Court of any city or county of this state].
**Section 6.** [*Optional Procedure.*] The right of a judgment creditor to bring an action to enforce his judgment instead of proceeding under this Act remains unimpaired.
**Section 7.** [*Uniformity of Interpretation.*] This Act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.
**Section 8.** [*Short Title.*] This Act may be cited as the Uniform Enforcement of Foreign Judgments Act.

be made a separate and independent judgment in the enforcement state. The UEFJA simply provides an expedited procedure for doing this.").[3]

Maryland adopted a version of the UEFJA in 1987 and it is codified at C&JP §§ 11-801 through 11-807.  Pertinent to this discussion are Section 11-802(a) and (b), which provide:

> (a)(1)(i) Except as provided in subparagraphs (ii) and (iii) of this paragraph, a copy of any foreign judgment authenticated in accordance with an act of Congress or statutes of this State may be filed in the office of the clerk of a circuit court.
> (ii) If the face amount of the judgment is $2,500 or less, the copy shall be filed with the clerk of the District Court.
> (iii) If the face amount of the judgment is not more than a jurisdictional amount described in § 4-401 of this article, but more than $2,500, the copy may be filed either with the clerk of the District Court or in the office of the clerk of a circuit court.
> (2) The clerk shall treat the foreign judgment in the same manner as a judgment of the court in which the foreign judgment is filed.
>
> (b) A filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed.

Also relevant to this discussion is C&JP 11-805(b), which states:

> (b) The judgment creditor retains the right to bring an action to enforce a judgment instead of proceeding under this subtitle.

---

[3] A point on nomenclature.  A creditor's act of registering a foreign judgment in a state in which the creditor seeks to satisfy the judgment is called "domestication."

Section 11-802(b) of the Courts and Judicial Proceedings Article is a modified version of Section 2 of UEFJA. The General Assembly added "enforcing" and "satisfying" to the model language in the UEFJA in C&JP § 11-802(b). § 1, Chapter 497, Laws of Maryland 1987. This addition reveals the legislature's intent that a foreign judgment should have the same effect, and be subject to the same procedures, defenses, and proceedings for enforcement as a judgment that originated in a Maryland court. Additionally, the General Assembly enacted a slightly modified version of Section 6 of the UEFJA, codified as C&JP § 11-805(b), which gives a judgment creditor the "right" to bring a separate legal action to enforce a judgment rather than using C&JP § 11-803.[4]

Reading C&JP § 11-802(b)'s requirement that the enforcement of foreign judgments be subject to Maryland's procedures, defenses, and proceedings together with C&JP § 11-805(b) permits litigants to bring a separate, independent cause of action to enforce a foreign judgment. This reveals the General Assembly's intent that Maryland's courts apply our statutes and rules of civil procedure to the enforcement of foreign judgments in Maryland.

---

[4] The uniform act says, "The right of a judgment creditor to bring an action to enforce his judgment instead of proceeding under this Act remains unimpaired." § 6 of Revised UEFJA. **[https://bit.ly/33P42QT]**.

## C. **Mr. Stevenson's Contentions**

Mr. Stevenson argues *first*, that we should interpret C&JP § 11-603's registration provision consistent with the UEFJA. As will be discussed, in the federal practice, registration of a judgment from one jurisdiction in another creates a separate judgment in the new jurisdiction once domesticated. And enforcement of a domesticated foreign judgment begins when the recognizing forum enters the judgment. Were we to follow the federal practice, as Mr. Stevenson argues, the date of entry of a foreign judgment would be the day the judgment is entered and recognized in Maryland, rather than the date that the judgment was originally entered in the home state. For support, Mr. Stevenson relies on the holdings in *Wells Fargo Equipment Finance, Inc. v. Nabil Asterbadi*, 841 F.3d 237 (4th Cir. 2016) and *St. Paul Mercury Ins. v. American Bank Holdings*, 691 F.Supp.2d 626 (D. Md. 2010), as well as the Maryland Rules of Civil Procedure.

*Asterbadi* concerned a $2.63 million judgment that CIT/Equipment Financing, Inc. ("CIT") obtained against Dr. Nabil J. Asterbadi in the U.S. District Court for the Eastern District of Virginia in 1993. 841 F.3d at 240. Under Virginia law, the judgment was viable for 20 years. *Id*. Ten years later, in 2003, CIT registered the judgment in the U.S. District Court for the District of Maryland, where CIT believed Asterbadi had assets. *Id*. Under Maryland law, the judgment was only viable for 12 years from the date of entry. *Id*. at 241. CIT sold the judgment to Wells Fargo, which, in 2015, sought to collect on the judgment. *Id*.

Asterbadi moved for a protective order asserting that the judgment was unenforceable because Wells Fargo sought to collect more than 12 years after the judgment had been entered in Virginia. *Id.* Before the U.S. District Court for the District of Maryland, Wells Fargo argued that time began to run from the date that the judgment was domesticated in Maryland, rather than the date that the judgment was originally entered in Virginia. *Id.* The District Court agreed with Wells Fargo. *Id.* at 242.

The Fourth Circuit Court of Appeals affirmed. The Court quoted the relevant portion of the federal version of the UEFJA, 28 U.S.C. § 1963:

> A judgment in an action for the recovery of money ... entered in any ... district court ... may be registered by filing a certified copy of the judgment in any other district .... A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

And stated,

> [w]e thus construe § 1963 to provide for a new judgment in the district court where the judgment is registered, as if the new judgment had been entered in the district after filing an action for a judgment on a judgment. Accordingly, just as a new judgment obtained in an action on a previous judgment from another district would be enforceable as any judgment entered in the district court, so too is a registered judgment.

*Asterbadi*, 841 F.3d at 244.

Mr. Stevenson urges us to hold that the operative date under C&JP § 11-603 is the date on which the foreign judgment is domesticated. In Mr. Stevenson's view, this

- 13 -

interpretation would make Maryland consistent with federal courts and other states that recognize the UEFJA.

*Second*, to further draw the analogy with the federal practice, Mr. Stevenson cites *St. Paul Mercury Ins. Co. v. American Bank Holdings, Inc.* There, the U.S. District Court of Maryland was asked to consider whether registering a foreign judgment under 28 U.S.C. § 1963, the federal version of the UEFJA, constituted "purposeful availment" under Maryland's long-arm statute to establish personal jurisdiction. 691 F.Supp.2d at 629. The U.S. District Court held that because registering a foreign judgment under § 1963 resembles filing a second lawsuit to enforce the first judgment, the act of registering a foreign judgment under the UEFJA meets the requirements of Maryland's long-arm statute and triggers personal jurisdiction over a non-resident defendant. *Id.* at 629-30.

Mr. Stevenson urges us to hold as the U.S. District Court in *St. Paul Mercury* did. Registering a foreign judgment in Maryland is similar to initiating a second cause of action to enforce that judgment, and, therefore, the date of enforcement begins the day Maryland formally recognizes the judgment.

*Finally*, Mr. Stevenson argues that we should strictly apply Maryland Rule 2-601.[5] Specifically, Mr. Stevenson refers to 2-601(d) which states "the date of the judgment is the

---

[5] ENTRY OF JUDGMENT
(a) Separate Document--Prompt Entry.
(1) Each judgment shall be set forth on a separate document and include a statement of an allowance of costs as determined in conformance with Rule 2-603.

date that the clerk enters the judgment on the electronic case management system docket

("MDEC") in accordance with section (b) of this Rule."

### D. **Edgefield's Contentions**

Edgefield, on the other hand, argues that we should strictly apply the Full Faith and

Credit Clause to C&JP § 11-603.  In Edgefield's opinion, this means that any judgment

---

(2) Upon a verdict of a jury or a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith prepare, sign, and enter the judgment, unless the court orders otherwise.
(3) Upon a verdict of a jury or a decision by the court granting other relief, the court shall promptly review the form of the judgment presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed.
(4) A judgment is effective only when so set forth and when entered as provided in section (b) of this Rule.
(5) Unless the court orders otherwise, entry of the judgment shall not be delayed pending determination of the amount of costs.

(b) Applicability--Method of Entry--Availability to the Public.
(1) Applicability. Section (b) of this Rule applies to judgments entered on and after July 1, 2015.
(2) Entry. The clerk shall enter a judgment by making an entry of it on the docket of the electronic case management system used by that court along with such description of the judgment as the clerk deems appropriate.
(3) Availability to the Public. Unless shielding is required by law or court order, the docket entry and the date of the entry shall be available to the public through the case search feature on the Judiciary website and in accordance with Rules 16-902 and 16-903.

(c) Recording and Indexing. Promptly after entry, the clerk shall (1) record and index the judgment, except a judgment denying all relief without costs, in the judgment records of the court and (2) note on the docket the date the clerk sent copies of the judgment in accordance with Rule 1-324.
(d) Date of Judgment On and after July 1, 2015, regardless of the date a judgment was signed, the date of the judgment is the date that the clerk enters the judgment on the electronic case management system docket in accordance with section (b) of this Rule. The date of a judgment entered prior to July 1, 2015 is computed in accordance with the Rules in effect when the judgment was entered.
Md. Rule 2-601.

registered under a version of the UEFJA must use the date the rendering state entered the judgment as "the date of entry of judgment giving rise to the garnishment." Edgefield asserts that Mr. Stevenson has not provided sound authority that should persuade us to recognize the date that Maryland enters a foreign judgment as "the date of entry of judgment giving rise to the garnishment."

Edgefield maintains that there are two reasons we should not apply *Asterbadi* to the facts of this case. *First*, Edgefield argues that *Asterbadi*'s holding applies to the registration of a money judgment between federal courts in different states. Further, Edgefield notes that *Asterbadi* did not interpret the UEFJA whatsoever.

*Second*, Edgefield argues that we recently distinguished *Asterbadi* in *Lee v. Lee*, 240 Md. App. 47 (2019). There, we considered the propriety of the circuit court's refusal to vacate a judgment that the court's clerk had filed and indexed against one brother, the judgment debtor. *Id.* at 49. The other brother, the judgment creditor, claimed that his 2004 filing of a federal judgment in a Maryland circuit court created a second judgment in Maryland that could be renewed before the expiration of the twelve-year expiration period. *Id.* at 69-70. After deciding issues regarding the timeliness of the appeal, *id*. at 57-69, we addressed the effect of the creditor-brother's 2004 filing and determined that the filing of the federal judgment in Maryland created a lien, not a second judgment, and was, therefore, not subject to renewal after the expiration of the underlying federal judgment. *Id*. at 74-75. In making this determination, we examined the creditor-brother's assertion that *Asterbadi* controlled. *Id*. at 73-74. We concluded that *Asterbadi* concerned the registration

of money judgments within the federal system, not between the federal and state court systems. *Id*. Thus, we determined that *Asterbadi* could not help us decide whether the federal judgment at issue there, once domesticated, remained a judgment or became a lien. *Id*. Edgefield takes from this holding that we should decline to apply *Asterbadi* when interpreting the provisions of C&JP § 11-603.

Instead, Edgefield argues that *Underwriters Nat'l. Assur. Co. v. N.C. Guaranty Ass'n*, 455 U.S. 691 (1982) should guide our decision. There, Underwriters National Assurance Company ("Underwriters"), an Indiana corporation, was licensed to do business in North Carolina, provided that they posted a $100,000 bond with the North Carolina Life and Accident Health Insurance Guaranty Association ("the North Carolina Association"). *Id*. at 694. Underwriters became insolvent. *Id*. at 695. An Indiana state court ("the Rehabilitation Court") began rehabilitation proceedings against Underwriters, and the North Carolina Association moved to intervene. *Id*. After a hearing in which the North Carolina Association participated, the Rehabilitation Court ruled that all claims against Underwriters were settled by way of Underwriters' adoption of a rehabilitation plan. *Id*. at 699.

A dispute later erupted between Underwriters and the North Carolina Association, leading the latter to file suit in North Carolina to recover the $100,000 bond for its state's insureds. *Id*. at 701-02. A North Carolina trial court refused to honor the Rehabilitation Court's ruling and permitted the North Carolina Association to recover $100,000 from Underwriters. *Id*. at 702-03. The North Carolina Court of Appeals affirmed. *Id*. at 703.

The North Carolina Supreme Court refused to review. *Id.* Underwriters appealed to the United States Supreme Court. *Id.*

The United States Supreme Court held, despite North Carolina's argument that the Rehabilitation Court lacked subject matter jurisdiction, that North Carolina was obliged to honor the Rehabilitation Court's judgment. *Id*. at 705. In the Court's opinion, *res judicata* foreclosed any challenge that North Carolina could mount to the Indiana Rehabilitation Court's jurisdiction.

> Any doubt about this proposition was definitively laid to rest in *Durfee v. Duke*, 375 U.S. 106, 111 (1963) where this Court held that "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." The North Carolina courts, therefore, should have determined in the first instance whether the Rehabilitation Court fully and fairly considered the question of subject matter jurisdiction over the North Carolina deposit, with respect to pre-rehabilitation claims of the parties before it. If the matter was fully considered and finally determined in the rehabilitation proceedings, the judgment was entitled to full faith and credit in the North Carolina courts.

*Id*. at 706.

On this basis, Edgefield urges us to give full faith and credit to Florida and recognize the date that the Florida court entered judgment against Mr. Stevenson. Edgefield finds additional support in *Superior Court of California v. Ricketts*, 153 Md. App. 281 (2003), where the putative father of a child challenged the mother's registration of a California default child support judgment. There, we held that as a fundamental constitutional directive, full faith and credit requires that "the judgment of a state court should have the

same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Id*. at 326 (quoting *Underwriters*, 455 U.S. at 704).

Edgefield also asks us to consider a subsidiary point we made in *Lee*. There, the court's clerk called the creditor-brother's papers a "judgment" when they docketed that filing in the court's MDEC system. 240 Md. App. at 73. We, however, determined that the creditor-brother's registration of the federal money judgment created a lien, not a second judgment. *Id*. We noted that the circuit court clerk's erroneous docket entry did not determine what the filing was; only a court could make that determination. *Id*. From this, Edgefield maintains that we should not consider the clerk's entry of the date, "November 22, 2017," to be dispositive. Instead, Edgefield urges us to determine which date is controlling when interpreting C&JP § 11-603.

Finally, Edgefield advances a policy argument. They argue that if we were to interpret C&JP § 11-603's "date of entry of judgment of the garnishment" to mean the date that Maryland recognizes the judgment, it would mean that judgment debtors could conceal assets from judgment creditors by moving from one state to another, thereby rendering Maryland's version of the UEFJA, C&JP § 11-803, a nullity.

## E. Proper Date of Entry of Foreign Judgment

At this juncture in the analysis, it would be helpful to discuss the holding in *Mike Smith Pontiac*, *supra*, which Mr. Stevenson cited at the circuit court hearing, but did not cite in his brief or at oral argument. The central question in that case was: which post-judgment interest rate applies to a federal judgment registered in a Maryland state court, the lower

federal rate of post-judgment interest or Maryland's higher post-judgment interest rate? 356 Md. at 550-51. In reaching its decision, the Court of Appeals noted that Maryland is a "*lex fori*" state.[6] Consequently, when there is a conflict between the procedural laws of two jurisdictions, we apply the procedural rules of the enforcing jurisdiction. *Id*. at 551 (citing *Beilman v. Poe*, 138 Md. 482, 487 (1921)). The Court of Appeals also noted that the purpose behind the UEFJA was to streamline, not replace, the process of enforcing a judgment from one jurisdiction in another. 356 Md. at 552-55 (citing *Weiner v. Blue Cross of Maryland, Inc.*, 730 F. Supp. 674, 676 (D. Md. 1990)). Specifically, the Court stated,

> the principle to be drawn from [*Weiner*] is that because the UEFJA is intended 'merely to streamline the procedure' of filing a new suit, and not to alter substantive rights". . . "whatever rights or defenses a party may have had with respect to an independent action in the enforcement state, that party also has with respect to the judgment filed under the UEFJA.

*Id.* at 555.

Further, the Court of Appeals observed, "some courts distinguish between the domestication (or recognition) of a judgment and its enforcement." 356 Md. at 562. The Court of Appeals did so when it said, "Smith did indeed domesticate its Florida District judgment by filing it under Maryland's version of the UEFJA. While this Court must recognize the judgment as a valid Maryland judgment, this Court also may inquire into post-judgment defenses in order to determine the extent to which it is enforceable." *Id*. (citing *C.F. Barry Properties, Inc. v. Blanton & McCleary*, 71 Md. App. 280, 292 (1987),

---

[6] "*Lex fori*," or "law of the forum." *West's Law Encyclopedia of American Law*, 2nd ed. (2008).

*cert. denied*, 310 Md. 490 (a declaration of satisfaction by post-judgment agreement is "'in recognition of the judgment' and not a collateral attack upon its validity")). Finally, the Court of Appeals held that the interest must accrue from when the judgment is entered in Maryland. *Id*. at 565-66.

Eight and one-half years later, this Court re-examined the distinction between recognizing foreign judgments, on the one hand, and enforcing them, on the other hand, in *Livingston v. Naylor*, 173 Md. App. 488 (2007). There, we were faced with determining whether Livingston, a North Carolina resident, could have his wages garnished to satisfy a foreign judgment while he was temporarily working in Maryland for his employer, Marriott. *Id*. at 491-492. We held that fairness and due process would permit the garnishment of temporary wages that Livingston earned while in Maryland but not those wages that he earned outside the state. "We conclude that in Livingston's case, in addition to the state of his residence, the state in which he rendered the labor that gave rise to Marriott's obligation to pay wages is the state that can garnish Marriott for those wages without offending the due process standard of fair play and substantial justice." *Id.* at 520.

From this analysis, we observe the UEFJA was designed to ease the procedure for a judgment creditor to collect a debt. Consequently, it is reasonable to conclude that if the creditor had filed a new or second action in Maryland then the date of judgment would have been the date on which the clerk entered the judgment in Maryland. Further, we note that, for the purposes of interpreting C&JP § 11-603, when "the date of entry of judgment giving rise to the garnishment" is the date that Maryland recognizes the foreign judgment,

- 21 -

doing so places Maryland in accord with federal practice. *See Asterbadi*, 841 F.3d at 243. Additionally, during the debate at the Uniform Law Commission on the adoption of a revised version of the UEFJA, the drafters referenced the federal practice.[7]

Further, we find guidance in the Maryland Rules. *First*, we note that the word "judgment" is defined in Maryland Rule 1-202(o), which states that "an order of court" does not qualify as a "judgment" unless it is "entered pursuant to these rules." Here, the "entering" referred to in the rule is done by a Maryland court. Therefore, when our rules speak of "judgments," they speak of judgments entered in a Maryland court. And, Maryland Rule 2-631 states that "[j]udgments may be enforced only as authorized by these rules or by statute."

*Second*, we observe that when the Maryland Rules apply to foreign judgments, they do so expressly. Two examples illustrate the point. Maryland Rule 2-623 addresses "recording a judgment of another court." Subsection (a)(2), specifically states: "At the time a *foreign judgment* as defined in Code, Courts Article, § 11-801 is filed, the judgment creditor shall file an affidavit in compliance with Code, Courts Article, § 11-803(a). Upon

---

[7] "With this judgment you can do exactly the same things you could do with a domestic judgment … whether it is by statute or rule or something else in a state, [former] Rule 60 of the Federal Rules of Civil Procedure…" *Revised Uniform Enforcement of Foreign Judgments Act Before the Committee of the Whole*, National Conference of Commissioners on Uniform State Laws 4 (1964) (statement of Mr. Jestrab). "We always have the proposition that notice is complete upon mailing, and that runs all through the Federal rules, and I suppose that it could probably do so here." *Id*. at 11 (statement of Mr. Jestrab); "It's an implementation of the federal system, and, of course, this is the sort of thing that [attorneys practicing debt collection in federal courts] have been doing under the federal statute, which is Section 1963 of Title 28." *Id.* at 16 (statement of Mr. Jestrab).

receipt of the affidavit, the clerk shall mail to the judgment debtor the notice required by Code, Courts Article, § 11-803(b) and make a docket entry notation of the mailing." (emphasis added). Additionally, Md. Rule 2-632(g) states: "A stay of enforcement of a foreign judgment, as defined in Code, Courts Article, § 11-801, is governed by Code, Courts Article, § 11-804."

Moreover, the phrase "foreign judgment" is used explicitly in our statutes, such as in subtitle 7 of Maryland Code, (1973, 2013 Repl. Vol.) C&JP §10-701(b), the Uniform Foreign Money-Judgments Recognition Act ("UFMJRA"), where "foreign judgment" is defined as "any judgment of a foreign state granting or denying recovery of a sum of money. It does not mean a judgment for taxes, fine, or penalty, or a judgment for support in matrimonial or family matters." And as discussed, in Maryland's version of the UEFJA, C&JP § 11-801: "In this subtitle, 'foreign judgment' means a judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in this State." Thus, some of the statutory provisions in Title 11 of the Courts and Judicial Proceedings Article apply to "judgments" and others apply to "foreign judgments."

*Third*, as for garnishments generally, Maryland Rule 2-645 controls. By its terms, Rule 2-645 applies to judgments, not foreign judgments. Indeed, Maryland's rules for enforcing judgments, by their express terms, likewise refer to "judgments," not "foreign judgments." *E.g.*, Maryland Rules 2-632, 2-633, 2-641, 2-642, 2-643, 2-644, 2-645. It is precisely for that reason that, prior to Maryland's adoption of the UEFJA, judgment creditors were required to file a separate action on the foreign judgment in a Maryland

- 23 -

court before Maryland's enforcement mechanisms could be engaged. *See* Subsection B of this opinion on Maryland's adoption of the UEFJA.

From this analysis we determine that the statutory landscape that existed when C&JP §11-603 became law supports the proposition that C&JP §11-603(a)(2) refers to Maryland judgments, not foreign judgments. We note that the UFMJRA became effective in Maryland in 1963, the UEFJA was adopted in Maryland in 1987, and C&JP §11-603 was enacted in 1989. We conclude from this timeline, by the time C&JP §11-603 became law, the Maryland Rules and our statutes clearly differentiated between "judgments" and "foreign judgments" such that when a rule or statute was intended to apply to a foreign judgment, it expressly used the term "foreign judgment." Yet, with that distinction already firmly embedded in Maryland law, the General Assembly chose to draft C&JP §11-603 to only apply, on its face, to judgments, not foreign judgments.

Ultimately, we determine that *Asterbadi* should guide our interpretation of the effective date of foreign judgments. In other words, registration of a judgment within a jurisdiction gives rise to enforcement within that jurisdiction. Maryland's version of the UEFJA, C&JP §§ 11-801 through 11-807, is an implementation of federal practice at the state level.

Edgefield's concern that *Lee* renders *Asterbadi* inapplicable may be allayed. *First*, *Lee* does not involve the recordation of a foreign judgment under Maryland's version of the UEFJA. Instead, *Lee* involved a domestic judgment (albeit one from the federal district court). *Lee*, 240 Md. App. at 50-51. There, the judgment-creditor recorded and indexed

that judgment in the circuit court, under Rule 2-623, so that it would be a lien on the judgment-debtor's interest in any land in that county. *Lee*, 240 Md. App. at 51-52. In our analysis, we merely acknowledged that the issue in *Asterbadi* was recognition of foreign judgments between federal courts, and that *Asterbadi* had no application to the facts there. *Second*, in *Lee* we did not address the effective date of the judgment/lien, nor did we address the application of C&JP § 11-603. *Third*, in *Lee* we did not announce which jurisdiction's date of registration should control when a court considers enforcing a garnishment.

In answer to Edgefield's chief concern, our interpretation of C&JP § 11-603 does not deny full faith and credit to a foreign judgment. We adhere to that fundamental constitutional principle. We simply align Maryland with federal law and treat Edgefield's judgment exactly as we would treat any Maryland judgment. The judgment is recognized and enforceable once it is properly registered here.

We conclude that the holding in *Asterbadi* does not undermine the principle that the rules and procedures of the domesticating jurisdiction control (*lex fori*). *Mike Smith Pontiac*, 356 Md. at 551. Further, we reiterate the holding in *Mike Smith Pontiac* that Maryland's version of the UEFJA is designed to streamline, not alter, the process of enforcing a foreign judgment. Domesticating the foreign judgment is similar to initiating a new cause of action. *Asterbadi*, *supra*. Therefore, the enforcement date would be when a final judgment is entered in Maryland.

Finally, we hold that Mr. Stevenson is correct when he argues that the date of entry of judgment must be in accord with Rule 2-601. Therefore, the proper "date of entry of judgment giving rise to the garnishment" under C&JP § 11-603 is the date that the court clerk enters the judgment into the MDEC system. Here, that date was November 20, 2017. Consequently, the circuit court should have granted Stevenson's motion to dismiss the garnishment.

**THE JUDGMENT OF THE CIRCUIT COURT FOR TALBOT COUNTY IS REVERSED. APPELLEE TO PAY COSTS.**