IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-400

No. COA 20-701

Filed 3 August 2021

New Hanover County, No. 13 CVS 2502

LAURI A. NIELSON (fka SCHMOKE), Plaintiff

v.

RAYMOND SCHMOKE, Defendant

Appeal by Defendant from Order entered 18 March 2020 by Judge George F. Jones in New Hanover County Superior Court. Heard in the Court of Appeals 12 May 2021.

*Butler & Butler, L.L.P., by Hunter E. Fritz, for plaintiff-appellee.*

*Kerner Law Firm, PLLC, by Thomas W. Kerner, for defendant-appellant.*

HAMPSON, Judge.

## Factual and Procedural Background

¶ 1 Raymond Schmoke (Defendant) appeals from an Order entered 18 March 2020 concluding judgments originally entered in a Michigan Court on 29 December 2003 and 12 October 2009, and filed as foreign judgments in North Carolina on 28 June 2013, remained enforceable in North Carolina under North Carolina's 10-year statutory enforcement period for judgments. Specifically, the trial court's Order denied Defendant's Motion to Abate Post-Judgment Proceedings and required

Defendant and his current spouse to respond to discovery in supplemental proceedings, including production of documents and other information requested under N.C. Gen. Stat. § 1-352.2. The Record tends to reflect the following:

¶ 2 On 29 December 2003, the Circuit Court for Manistee County, Michigan (Michigan Court) entered a judgment (Michigan Divorce Judgment) in favor of Lauri Nielson (Plaintiff) against Defendant, her ex-husband. On 12 October 2009, the Michigan Court entered an additional judgment in favor of Plaintiff (Supplemental Judgment).

¶ 3 On 28 June 2013, pursuant to North Carolina's version of the Uniform Enforcement of Foreign Judgments Act (UEFJA) contained in N.C. Gen. Stat. § 1C-1701 *et seq.* (2019), Plaintiff enrolled the Michigan Divorce Judgment and Supplemental Judgment (collectively, the Foreign Judgments), and commenced the current action through a Notice of Filing and by filing the Foreign Judgments in North Carolina with the New Hanover County Clerk of Superior Court. Consistent with N.C. Gen. Stat. § 1C-1703, Plaintiff filed the Foreign Judgments with a supporting affidavit averring the Foreign Judgments were final judgments and were, at the time, unsatisfied in the amount of $1,323,096.31. Consistent with N.C. Gen. Stat. § 1C-1704, Plaintiff served a Notice of Filing on Defendant along with copies of the Foreign Judgments and supporting affidavit.

¶ 4        On 29 July 2013, Defendant filed a Motion to Strike Affidavit and Notice of Defenses to Enforcement of Foreign Judgments pursuant to N.C. Gen. Stat. § 1C-1705. Defendant subsequently filed a Notice of Additional Defenses on 11 March 2014, along with a Motion to Strike Plaintiff's Amended Affidavit.

¶ 5        On 12 August 2015, the trial court entered a Judgment (North Carolina Judgment) concluding Plaintiff had met all the requirements under the UEFJA and the Foreign Judgments were entitled to Full Faith and Credit in North Carolina. The trial court entered the Judgment in favor of Plaintiff in the amount of $1,323,096.31 plus interest from and after 23 August 2013.

¶ 6        After an unsuccessful attempt to enforce the Judgment by way of Writ of Execution, Plaintiff began supplemental proceedings by conducting an oral examination of Defendant under N.C. Gen. Stat. § 1-352. Following this oral examination, on 2 October 2019, Plaintiff filed and served two separate Motions seeking Defendant and his current spouse to "Produce Documents and Information" pursuant to N.C. Gen. Stat. § 1-352.2. Both Motions were heard ex parte by the Clerk of Court, and on 3 and 9 October 2019 respectively, the Clerk of Court entered orders granting these Motions (collectively, Discovery Orders).

¶ 7        On 29 October 2019, Defendant filed a Motion to Set Aside the Order of the Clerk of Court ordering him to provide discovery in supplemental proceedings. Subsequently, on 19 December 2019, Defendant filed a Motion to Abate Post-

Judgment Proceedings on the basis the Foreign Judgments were no longer enforceable in North Carolina. During a 9 January 2020 hearing before the trial court on these Motions, Defendant argued all post-judgment enforcement efforts, including supplemental proceedings, should abate because the statutory 10-year period for enforcing a judgment in North Carolina had expired. Specifically, Defendant contended because the Supplemental Judgment had been entered by the Michigan Court in October 2009, at the latest, the enforcement period of the Foreign Judgments had expired in October 2019, and, thus, the North Carolina Judgment was also now unenforceable.

¶ 8        In its Order entered 18 March 2020, the trial court "[wa]s persuaded by the logic of *Wells Fargo Equip. Fin., Inc. v. Asterbadi*, 841 F.3d 237 (4th Cir. 2016) (applying 28 U.S.C. § 1963) and h[e]ld[] that the Enforcement Period started to run on the date the Foreign Judgments were filed with the Clerk of Court: June 28, 2013." The trial court also determined the Foreign Judgments "were entitled to Full Faith and Credit in the State of North Carolina." The trial court subsequently concluded: "[t]he Enforcement Period to enforce the North Carolina Judgment ha[d] not expired" and "[t]he Enforcement Period to enforce the Foreign Judgments ha[d] not expired." Accordingly, the trial court ordered: "Defendant's Motion to Abate Post-Judgment Proceedings is respectfully DENIED[.]" The trial court also denied Defendant's Motion to Set Aside the Clerk's Order requiring discovery responses and ordered

Defendant and his current spouse to "provide to counsel for the Plaintiff the documents and information set forth" in the Discovery Orders entered by the Clerk of Court "within ten (10) days following the entry of this Order." Defendant filed written Notice of Appeal on 17 April 2020.

**Appellate Jurisdiction**

¶ 9　　As an initial matter, Plaintiff characterizes the trial court's 18 March 2020 Order denying Defendant's Motion to Abate Post-Judgment Proceedings and requiring Defendant and his spouse to respond to discovery in post-judgment supplemental proceedings as a "Discovery Order[,]" which is interlocutory and not immediately appealable. For his part, Defendant contends the trial court's 18 March 2020 Order constitutes an appealable final order, or, in the alternative—if it does constitute an interlocutory order—it is one that, in effect, determines the action and prevents a judgment from which an appeal might be taken or otherwise affects a substantial right under N.C. Gen. Stat. § 7A-27(b).

¶ 10　　"Interlocutory orders and judgments are those made during the pendency of an action which do not dispose of the case, but instead leave it for further action by the trial court to settle and determine the entire controversy." *Sharpe v. Worland*, 351 N.C. 159, 161, 522 S.E.2d 577, 578 (1999) (quotation marks and citations omitted). "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Id*. (citations omitted) "The purpose of this rule is to prevent

fragmentary and premature appeals that unnecessarily delay the administration of justice and to ensure that the trial divisions fully and finally dispose of the case before an appeal can be heard." *Id.* at 161, S.E.2d at 578-79 (quotation marks and citations omitted).

¶ 11 Here, fundamentally, the trial court's 18 March 2020 Order resolves all issues before it on the basis the statutory 10-year period to enforce the Foreign Judgments in North Carolina had not expired, resulting in a Judgment enforceable through execution and supplemental proceedings. Thus, the trial court's Order is certainly in the nature of a final Order or Judgment from which appeal may be taken. *See Veazey v. City of Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950) ("A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." (citations omitted)).

¶ 12 Moreover, presuming the trial court's Order is interlocutory—to the extent it may be interpreted as compelling discovery in supplemental proceedings without imposing a sanction for failure to comply—we agree with Defendant the trial court's Order is one affecting a substantial right which would be lost absent immediate appeal permitting review under N.C. Gen. Stat. § 7A-27(b)(2)(a); that is, absent an immediate appeal, Defendant may be subject to enforcement proceedings, including execution on his property or the imposition of sanctions on a Judgment that may not otherwise be enforceable. This is exactly what application of the 10-year enforcement

period is designed to prevent. Indeed, it is unclear how, absent this immediate appeal, Defendant would ever be able to seek direct appellate review of the trial court's decision.[1] Consequently, for purposes of this appeal, we conclude Defendant has established his right to appeal the trial court's Order and, in turn, his appeal is timely and properly before us.

## Issue

¶ 13 The dispositive issue on appeal is whether the trial court properly concluded the 10-year period for enforcement of Plaintiff's Foreign Judgments in North Carolina accrued on the date the Foreign Judgments were filed in North Carolina on 28 June 2013 and, thus, had not expired as of 18 March 2020.

## Analysis

¶ 14 The trial court determined as a matter of law, the 10-year period to enforce the Foreign Judgments in North Carolina began to accrue upon the filing of the Foreign Judgments in North Carolina, consistent with the UEFJA. We apply a de novo review to issues of law. *Falk Integrated Techs., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999); *see also Goetz v. N.C. Dep't of Health & Hum. Servs.*, 203 N.C. App. 421, 425, 692 S.E.2d 395, 398 (2010) ("Where there is no dispute over the relevant facts, a lower court's interpretation of a statute of limitations is a conclusion

---

[1] Acknowledging Defendant might also have sought a form of discretionary review through a Petition for Writ of Certiorari filed under N.C.R. App. P. 21.

of law that is reviewed *de novo* on appeal." (citation omitted)).

¶ 15    As a general proposition, by application of statute, a money judgment remains enforceable in North Carolina for a period of 10 years from the entry of the judgment. *See* N.C. Gen. Stat. § 1-234 (2019) (governing docketing of judgments and providing: "[t]he judgment is a lien on the real property in the county where the same is docketed . . . for 10 years from the date of entry of the judgment under G.S. 1A-1, Rule 58, in the county where the judgment was originally entered."); N.C. Gen. Stat. § 1-306 (2019) (governing enforcement "as of course" of judgments and providing in part: "[h]owever, no execution upon any judgment which requires the payment of money may be issued at any time after ten years from the date of the entry thereof . . . ."); *see also* N.C. Gen. Stat. § 1-47(1) (10-year statute of limitations to bring an action "[u]pon a judgment or decree of any court of the United States or of any state or territory thereof . . . .").

¶ 16    Here, Defendant contends the Foreign Judgments—and, thus, the subsequent North Carolina Judgment entered acknowledging the validity of those Foreign Judgments and rejecting Defendant's alleged defenses—can no longer be enforced in North Carolina because the 10-year enforcement period lapsed, at the latest, on 13 October 2019, 10 years after the entry of the Supplemental Judgment in Michigan. On the other hand, Plaintiff contends the filing of the Foreign Judgments in North Carolina consistent with the UEFJA effectively results, for enforcement purposes, in

a new judgment in North Carolina that is enforceable for 10 years from its enrollment in North Carolina, which occurred in this case on 28 June 2013. The trial court agreed with Plaintiff and was persuaded by the logic of the U.S. Court of Appeals for the Fourth Circuit's (Fourth Circuit) decision in *Asterbadi*. In turn, we agree with the trial court that *Asterbadi* is persuasive and instructive to the analysis.

¶ 17    In *Asterbadi*, the Fourth Circuit "address[ed] the enforceability of a judgment originally entered in the Eastern District of Virginia but registered for enforcement in the District of Maryland under 28 U.S.C. § 1963[,]" which governs registration of judgments from other federal districts. *Asterbadi*, 841 F.3d at 239. "Particularly," the Fourth Circuit "consider[ed] the time period during which the judgment remain[ed] enforceable in Maryland." *Id.* The Fourth Circuit explained the factual background of the case:

> Collecting on a financing debt incurred by Dr. Nabil J. Asterbadi, CIT/Equipment Financing, Inc. ("CIT") obtained a $2.63 million judgment against Asterbadi in 1993, in the Eastern District of Virginia. Under Virginia law, that judgment remained viable for 20 years. Roughly 10 years after the judgment had been entered, on August 27, 2003, CIT registered the judgment in the District of Maryland pursuant to § 1963. Under Maryland law, made relevant by Federal Rule of Civil Procedure 69(a), judgments expire 12 years after entry.
>
> CIT sold the judgment to Wells Fargo Equipment Finance, Inc., and Wells Fargo thereafter, in April 2015, began collection efforts in Maryland. Asterbadi filed a motion for a protective order, contending that the judgment was unenforceable because the efforts began more than 12 years after the judgment had

originally been entered in Virginia. Wells Fargo responded that the registration of the Virginia judgment in Maryland before it had expired under Virginia law became, in effect, a new judgment that was subject to Maryland law for enforcement. Thus, it argued, Maryland's 12-year limitations period began on the date that the judgment was registered in Maryland, not on the date that the original judgment was entered in Virginia, and therefore the judgment was still enforceable.

> The district court agreed with Wells Fargo, concluding that the time limitation for enforcement of the judgment began with the date of its registration in Maryland, on August 27, 2003, and that therefore it was still enforceable against Asterbadi.

*Id.* at 239-40.

Under 28 U.S.C. § 1963:

> A judgment in an action for the recovery of money . . . entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963 (2019). The Fourth Circuit observed 28 U.S.C. § 1963 "was enacted . . . as a device to streamline the more awkward prior practice of bringing suit on a foreign judgment and thereby obtaining new judgment on the foreign judgment."

*Asterbadi*, 841 F.3d at 244. The Fourth Circuit reasoned:

> Thus, instead of requiring the holder of a Virginia judgment to file a complaint in the Maryland district court on the basis of the Virginia judgment, thereby engaging the federal process to obtain a new judgment enforceable in the District of Maryland, § 1963 allows the judgment holder simply to register the Virginia judgment in Maryland but to retain the benefits of obtaining a

> judgment under the former practice of suing on a judgment to obtain a new judgment.

*Id.* The Fourth Circuit found support for this reasoning in the statutory language itself: "[i]ndeed, § 1963 explicitly so provides, stating that a district court judgment registered in another district court 'shall have *the same effect as a judgment* of the district court . . . and *may be enforced in like manner.*' " *Id.* (second alteration in original) (quoting 28 U.S.C. § 1963). The Court in *Asterbadi* "thus construe[d] § 1963 to provide for a *new* judgment in the district court where the judgment is registered, as if the new judgment had been *entered* in the district" and "[a]ccordingly, just as a new judgment obtained in an action on a previous judgment from another district would be enforceable as any judgment entered in the district court, so too is a registered judgment." *Id.*

¶ 19 The Fourth Circuit further noted:

> [i]f registration were merely a ministerial act to enforce the Virginia judgment in Maryland, there would be no need for the statute to have added the language that the registered judgment functions the same as a judgment entered in the registration court. With that language, § 1963 elevates the registered Virginia judgment to the status of a new Maryland judgment, and it is accordingly enforced as a new judgment entered in the first instance in Maryland.

*Id.* at 245.

¶ 20 "With this understanding of § 1963," the Fourth Circuit "appl[ied] the principles applicable to any money judgment entered in a district court." *Id.* "Under

[Fed. R. Civ. P.] 69(a), the judgment [wa]s enforceable in accordance with state law, and in this case Maryland law provide[d] that 'a money judgment expires 12 years from the date of entry or most recent renewal.' " *Id.* "Accordingly, the registered judgment in this case would have expired 12 years from August 27, 2003, or on August 27, 2015. And because Wells Fargo renewed the judgment for another 12 years on August 26, 2015, the registered judgment remain[ed] enforceable in Maryland to August 26, 2027." *Id.*

¶ 21 Similar to 28 U.S.C. § 1963, the UEFJA governs the filing and enforcement of foreign judgments in North Carolina. *See* N.C. Gen. Stat. §§ 1C-1701 to -1708 (2019). "The UEFJA enacted in North Carolina sets out the procedure for filing a foreign judgment." *DOCRX, Inc. v. EMI Servs. of N.C., LLC*, 367 N.C. 371, 378, 758 S.E.2d 390, 395 (2014) (citations omitted). Similar to 28 U.S.C. § 1963, the UEFJA also serves the purpose of providing a more streamlined option for registering a foreign judgment, rather than requiring a judgment creditor to have to bring a suit on the foreign judgment in North Carolina. Indeed, as our Supreme Court noted in *DOCRX*, the Prefatory Note to the 1964 Revised Uniform Enforcement of Foreign Judgments Act, states the revised UEFJA:

> adopts the practice which, in substance, is used in Federal courts. It provides the enacting state with a speedy and economical method of doing that which it is required to do by the Constitution of the United States. It also relieves creditors and debtors of the additional cost and harassment of further litigation which would

otherwise be incident to the enforcement of the foreign judgment.

*Id.* at 380, 758 S.E.2d at 396 (quoting Rev. Unif. Enforcement of Foreign Judgments Act prefatory note (1964), 13 U.L.A. 156-57 (2002)); *see also* N.C. Gen. Stat. § 1C-1707 (2019) ("This Article may not be construed to impair a judgment creditor's right to bring a civil action in this State to enforce such creditor's judgment."). Moreover, like 28 U.S.C. § 1963, N.C. Gen. Stat. § 1C-1703 expressly provides a judgment filed in accordance with the UEFJA "has the same effect . . . as a judgment of this State and shall be enforced or satisfied in like manner[.]" N.C. Gen. Stat. § 1C-1703(a).

¶ 22        Given the similarities between 28 U.S.C. § 1963 and North Carolina's UEFJA, the analysis employed by the Fourth Circuit in *Asterbadi* is highly persuasive and equally employable to this case. *Asterbadi*'s persuasiveness here is further underscored by decisions of other state courts interpreting their own foreign judgment registration statutes. *See, e.g., Stevenson v. Edgefield Holdings, LLC*, 244 Md.App. 604, 225 A.3d 85, 99 (2020) ("Ultimately, we determine that *Asterbadi* should guide our interpretation of the effective date of foreign judgments. In other words, registration of a judgment within a jurisdiction gives rise to enforcement within that jurisdiction."); *Singh v. Sidana*, 387 N.J. Super. 380, 385, 904 A.2d 721, 724 (App. Div. 2006) ("The focus of this provision is manifestly on the commencement of the action to enforce the foreign judgment, not on the foreign judgment's continuing validity whenever such questions as may be raised are addressed. As long as a

judgment is viable and enforceable in the rendering state when domestication proceedings are commenced, that judgment becomes enforceable, by the terms of New Jersey law, at that moment."); *Canizaro Trigiani Architects v. Crowe*, 815 So.2d 386, 392 (La. App. 2 Cir. 2002) ("Therefore, the procedure for enforcement of a foreign judgment under the EFJA results in a new Louisiana judgment just as it would if the procedure under La. C.C.P. art. 2541 were followed."); *Pan Energy v. Martin*, 813 P.2d 1142, 1144 (Utah 1991) ("[A]t least for purposes of enforcement, the filing of a foreign judgment . . . creates a new Utah judgment which is governed by the Utah statute of limitations . . . . [F]oreign judgments filed in Utah must also be governed by the eight-year statute of limitations, which runs from the date of filing."); *see also Home Port Rentals, Inc. v. Int'l Yachting Grp., Inc.*, 252 F.3d 399, 407 (5th Cir. 2001) (under 28 U.S.C. § 1963 "when a money judgment (1) is rendered in a federal district court located in one state, and (2) is duly registered in a district court located in another state, (3) at a time when enforcement of that judgment is not time-barred in either state, the applicable limitation law for purposes of enforcement of the registered judgment in the registration district is that of the registration state—here, Louisiana's 10-year liberative prescription—and it starts to run on the date of registration." (emphasis omitted)); *Stanford v. Utley*, 341 F.2d 265, 268 (8th Cir. 1965) ("[Section] 1963 is more than 'ministerial' and is more than a mere procedural device for the collection of the foreign judgment. We feel that registration provides,

so far as enforcement is concerned, the equivalent of a new judgment of the registration court.").

¶ 23       For his part, Defendant contends we need not look to other jurisdictions for guidance and, instead, points to North Carolina authorities which stand for the proposition that in order for a foreign judgment to be enforceable in North Carolina, it must be filed under the UEFJA or a separate civil action filed to enforce it within 10 years from its entry in the foreign jurisdiction under the statute of limitations found in N.C. Gen. Stat. § 1-47. *See, e.g., Arrington v. Arrington*, 127 N.C. 190, 37 S.E.2d 212 (1900); *Palm Coast Recovery Corp. v. Moore*, 184 N.C. App. 550, 646 S.E.2d 438 (2007); *Elliot v. Estate of Elliot*, 163 N.C. App. 577, 596 S.E.2d 819 (2004); *Wener v. Perrone & Cramer Realty, Inc.*, 137 N.C. App. 362, 528 S.E.2d 65 (2000). However, our decision here is unrelated to efforts to register foreign judgments in North Carolina more than 10 years after their entry and has no bearing on the impact of the general rule applied in those cases. This is because, here, the initial Michigan Divorce Judgment was entered on 29 December 2003 and the Foreign Judgments were filed on 28 June 2013, and were, thus, filed within the 10-year Statute of Limitations mandated by N.C. Gen. Stat. § 1-47. As such, these cases are inapplicable to the particular issue at bar.

¶ 24       Applying the reasoning of *Asterbadi*—and the related cases—to North Carolina's UEFJA, when a foreign money judgment is filed in North Carolina in

compliance with N.C. Gen. Stat. §§ 1C-1703 and 1C-1704, such filing has the effect of creating a new North Carolina judgment, which "shall be enforced or satisfied in like manner[.]" N.C. Gen. Stat. § 1C-1703(c) (2019). This includes the 10-year enforcement period contemplated in N.C. Gen. Stat. §§ 1-234 and 1-306, as well as the running of any statute of limitations to enforce the "new" North Carolina judgment under N.C. Gen. Stat. § 1-47, which each begin to run upon the filing of the foreign judgment in North Carolina.

¶ 25        Thus, here, the trial court properly concluded the enforcement period in North Carolina began to run on 28 June 2013, the day the Foreign Judgments were properly filed in North Carolina. As the Foreign Judgments remained enforceable in North Carolina, the trial court also did not err by requiring Defendant and his current spouse to respond to the discovery requests in supplemental proceedings under N.C. Gen. Stat. § 1-352 *et seq.* Consequently, the trial court correctly denied Defendant's Motion to Abate Post-Judgment Proceedings and did not err in ordering Defendant and his current spouse to "provide to counsel for the Plaintiff the documents and information set forth" in the Discovery Orders entered by the Clerk of Court.

## Conclusion

¶ 26        Accordingly for the foregoing reasons, the trial court's 18 March 2020 Order is affirmed.

        AFFIRMED.

Judges TYSON and WOOD concur.